UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 26-cv-23906-JTK

JULIAN COX,

Plaintiff,

vs.

CITY OF MIAMI BEACH, a municipal corporation; LEON PAIGE, individually; JOSE CARBALLO PEREZ, individually; STEVEN FELDMAN, individually; KEVIN LORENZO, individually; JAVIER FERNANDEZ, individually; JOSE TUCCI, individually; CURTIS CREWS, individually,

Defendants.
_______________________________/

**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**
**AND INCORPORATED MEMORANDUM OF LAW**

Defendant, CITY OF MIAMI BEACH, FLORIDA (the "City"), LEON PAIGE, JOSE CARBALLO PEREZ, STEVEN FELDMAN, KEVIN LORENZO, JAVIER FERNANDEZ, JOSE TUCCI, CURTIS CREWS (collectively, the "Defendant Officers"), (collectively together with the City, "Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), move to dismiss Plaintiff, JULIAN COX's ("Plaintiff") Complaint [ECF No. 1] ("Complaint"). In support, Defendants state as follows:

## I. INTRODUCTION

Plaintiff's Complaint arises from an alleged April 16, 2023 encounter with officers of the Miami Beach Police Department ("MBPD") and asserts a total of twelve[1] causes of action against the City and the seven Defendant Officers:

1. Count I: Florida-law Malicious Prosecution, arising from the DUI prosecution, against Officers Lorenzo, Crews, and Fernandez;
2. Count II: Florida-law Malicious Prosecution, arising from the felony prosecution, against Officers Lorenzo, Crews, and Fernandez;
3. Count III: Malicious Prosecution under 42 U.S.C. § 1983 ("Section 1983") and the Fourth Amendment, arising from the DUI prosecution, against Officers Lorenzo, Crews, and Fernandez;
4. Count IV: Malicious Prosecution under Section 1983 and the Fourth Amendment, arising from the felony prosecution, against Officers Lorenzo, Crews, and Fernandez;
5. Count V: Excessive Force under Section 1983 and the Fourth Amendment against Officer Carballo Perez;
6. Count VI: Excessive Force under Section 1983 and the Fourth Amendment against Officer Paige;
7. Count VII: Florida-law Battery against Officers Carballo Perez and the City;
8. Count VIII(a)[2]: Florida-law Battery against Paige and the City;
9. Count VIII(b): a Section 1983 claim for Failure to Intervene in violation of the Fourth Amendment against Officers Paige, Feldman, and Lorenzo;
10. Count IX: a Section 1983 claim for Unreasonable Search and Seizure in violation of the Fourth Amendment against Officers Paige, Lorenzo, and Tucci;

---

[1] Plaintiff brings twelve substantive claims, although the Complaint contains a duplicative numbering of Count VIII.
[2] Given the duplicative inclusion of Count VIII, and for purposes of clarity and distinction, the two counts will hereinafter be referred to as Count VIII(a) and Count VIII(b).

11. Count X: Florida-law False Imprisonment/False Arrest against Officers Paige, Lorenzo, and Tucci and the City; and
12. Count XI: Excessive Force and Malicious Prosecution under Section 1983 and the Fourth Amendment against the City.

All these Counts fail to state a cause of action for several independent reasons.

As to the City, *first*, Plaintiff's state-law tort claims against the City—Counts VII, VIII(a), and X—are barred because Plaintiff failed to comply with the mandatory presuit notice requirements of Florida Statutes § 768.28(6). Although the Complaint conclusorily alleges that all conditions precedent have been satisfied, compliance with the presuit notice requirement must be specifically pled under Florida law. Such specific pleading is impossible, as Plaintiff did not timely present written notice of his claims to the City as required. Compliance with Section 768.28(6) is a condition precedent to maintaining a tort action against a Florida municipality. Accordingly, the state-law claims against the City must be dismissed. Alternatively, the state law claim shall be dismissed because the Complaint alleges conduct by the Defendant Officers that precludes imputing liability to the City under Florida Statutes § 768.28(9)(a).

*Second*, Count XI should be dismissed as a shotgun pleading because it commingles multiple distinct legal theories—e.g., excessive force, malicious prosecution, failure to supervise, and failure to train—in a single count.

*Third*, even if Count XI were not shotgun in nature, it fails to state a claim for municipal liability under Section 1983 and *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). The Complaint fails to identify an official City policy directing or authorizing excessive force, false reports, or malicious prosecution. Instead, Plaintiff attempts to convert a handful of prior, factually distinct incidents, and settlements of civil claims without admission of liability, into a municipal custom. That is insufficient. Section 1983 does not impose respondeat-superior liability upon municipalities, and the allegations that individual officers engaged in misconduct, even when coupled with allegations regarding unrelated and/or settled claims, do not plausibly establish a widespread and permanent municipal custom. Additionally, Plaintiff combines allegations concerning excessive force and malicious prosecution as though evidence of one establishes a municipal custom concerning the other. It does not.

Plaintiff's alternative failure-to-train and/or failure-to-supervise theories fare no better. The Complaint identifies no specific deficiency in the City's training program or supervision procedures, no pattern of substantially similar constitutional violations demonstrating that the City

knew additional training or supervision was necessary, and no deliberate municipal decision to disregard such a known need. Nor does Plaintiff identify a final City policymaker responsible for adopting or ratifying the supposed unconstitutional practices. Count XI therefore seeks to impose liability on the City for the alleged acts of individual police officers— the precise theory of municipal liability that *Monell* prohibits.

For these independent reasons, Counts VII, VIII(a), X, and XI should be dismissed as against the City.

As to the Defendant Officers, every remaining count fails as well. First, the federal malicious prosecution claims (Counts III and IV) fail because Plaintiff – who was arrested without a warrant and released on bond the same day – was never seized pursuant to legal process. Second, the Florida malicious prosecution claims (Counts I and II) fail because Plaintiff alleges no bona fide termination: the felony case ended only after he entered and completed a negotiated pretrial diversion program, and the Complaint pleads no facts connecting Officer Crews or Sergeant Fernandez to the felony charges at all. Third, the force claims (Counts V, VI, VII, and VIII(a)) describe force used to secure an un-handcuffed driver who, by his own account, turned away when an officer took his arm and whom three officers then could not handcuff on the ground. Fourth, the failure to intervene claim (Count VIII(b)) challenges force that Plaintiff himself alleges came "without warning" or within seconds. Fifth, the seizure claims (Counts IX and X) name two officers who seized no one and otherwise rest on a legal conclusion. Finally, the Defendant Officers are entitled to qualified immunity on every federal claim.

## II. FACTUAL ALLEGATIONS[3]

This action arises from a traffic stop that occurred during the early morning hours of April 16, 2023, in Miami Beach, Florida. Compl. ¶ 32. Plaintiff alleges that Officer Paige observed Plaintiff driving near Dade Boulevard and Meridian Avenue and initiated a traffic stop. *Id.* ¶¶ 34–35. Officer Paige approached Plaintiff's vehicle and directed Plaintiff to exit the vehicle. *Id.* ¶¶ 35–39.

After exiting the vehicle, Plaintiff alleges that Officer Paige attempted to place him in handcuffs. *Id.* ¶¶ 40–45. Plaintiff alleges that he asked why he had been stopped and that, when

[3] The Complaint's factual allegations are taken as true for purposes of this Motion only. Should any claims survive dismissal (and none should), Defendants reserve all rights to dispute the Complaint's allegations.

Officer Paige took hold of his arm from behind, he "turned his head and upper body away from the truck." *Id.* ¶¶ 40–46. According to the Complaint, Officer Paige then attempted to gain control of Plaintiff and bring him to the ground, and additional Miami Beach police officers subsequently arrived at the scene, including Officer Carballo Perez. *Id.* ¶¶ 45–52.

Plaintiff alleges that, during the ensuing encounter, Officer Carballo Perez deployed his taser while Plaintiff was on the ground and that the officers thereafter placed Plaintiff in handcuffs. *Id.* ¶¶ 53–67. Plaintiff was arrested and charged with battery on a law-enforcement officer, resisting an officer with violence and resisting an officer without violence. *Id.* ¶¶ 97–98. Although Plaintiff alleges that the resulting criminal proceedings were subsequently dismissed, (*Id.* ¶¶ 68, 91, 105), the record of the underlying criminal proceeding (Case No.: F-23-007731) reflects that surety bonds were issued on April 16, 2023, the day of the arrest; that the State took no action on the resisting-with-violence charge; and that, after the case had been set for trial, Plaintiff was accepted into a Pretrial Diversion Program on the remaining battery and resisting-without-violence charges.[4] Only after a successful completion of the Pretrial Diversion Program did the State enter a nolle prosequi on those charges, and the case was closed on October 7, 2024. *See* Ex. 1.

Plaintiff filed this lawsuit on June 3, 2026. As relevant to Plaintiff's state-law claims, the Complaint alleges generally that Plaintiff "has performed all conditions precedent, in accordance with § 768.28(6), Florida Statutes," or that such conditions "have occurred, been performed, been met, been waived, would be futile, or are otherwise inapplicable." Compl. ¶ 5. The Complaint does not identify when Plaintiff allegedly presented written notice of his tort claims to the City.

## III. LEGAL STANDARD

[4] A copy of the Criminal case docket sheet is attached hereto as **Exhibit 1**, and a copy of the Pretrial Diversion Program acceptance is attached hereto as **Exhibit 2**. "There are two exceptions to the conversion provision in Rule 12(d)." *Overstreet v. Worth Cnty. Georgia*, No. 21-14391, 2022 WL 4007460, at *3 (11th Cir. Sept. 2, 2022) The first is the "incorporation by reference" doctrine, which allows for documents attached to a motion to dismiss to be considered by the court if they are: (1) central to the plaintiff's claim and (2) undisputed (authenticity of the document is not challenged). *Id.* (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). The second exception occurs where the court takes judicial notice of documents, such as matters of public record and prior court records. *Id.* In *Overstreet*, the Eleventh Circuit held that the district court properly considered prior filings by the appellants in related state-court proceedings. Similarly, here, not only is the criminal matter expressly incorporated by reference in Plaintiff's Complaint (Compl. ¶ 98), but at the dismissal stage the Court may also take judicial notice of the state-court docket and the Pretrial Diversion Program as prior filings in that related proceeding.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 556. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 663. "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Fin. Sec. Assurance, Inc. v. Stephens, Inc*., 500 F.3d 1276, 1282 (11th Cir. 2007) (per curiam) (*Twombly*, 550 U.S. at 555); *Leeds v. Meltz*, 85 F.3d 51, 53 (2nd Cir. 1996)("[B]ald assertions and conclusions of law will not suffice."); *see also Jackson v. BellSouth Telecomm*., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal). A complaint must contain enough facts to plausibly allege the required elements. *Watts v. Fla. Int'l Univ*., 495 F.3d 1289, 1295–96 (11th Cir. 2007).

Thus, pursuant to *Iqbal*/*Twombly*, the burden is on Plaintiff to demonstrate the plausibility of his claims on the face of the Complaint by identifying facts that support each Defendant's alleged wrongdoing. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679–80. Plaintiff fails to meet his burden, therefore warranting a dismissal of the Complaint.

Defendant Officers also invoke qualified immunity on every federal claim. Qualified immunity shields officers acting within their discretionary authority, as the Complaint alleges the Officers were (Compl. ¶¶ 7, 10-16), unless the plaintiff shows both a constitutional violation and that the right was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The defense may be resolved on a motion to dismiss, *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019), and "each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018).

## IV. ARGUMENT

### A. <u>As to the City: Counts VII, VIII(a), and X Are Barred by Sovereign Immunity Based on Non-Compliance with Conditions Precedent (Florida Statutes Section 768.28(6))</u>

Counts VII, VIII(a), and X seek to impose liability upon the City under Florida tort law based on events that allegedly occurred on April 16, 2023. Counts VII and VIII(a) assert battery claims, while Count X asserts a false arrest/false imprisonment claim. These claims are barred by sovereign immunity.

Florida Statutes § 768.28(6) states in pertinent part: "An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, . . . within **3 years after such claim accrues** and . . . the appropriate agency denies the claim in writing[.]" Fla. Stat. § 768.28(6)(a) (emphasis added). Section 768.28(6) thus creates a **condition precedent** to suing a sovereign like the City in tort: (1) the claimant must first present written notice of its claim, and (2) the sovereign must either deny the claim in writing or allow six months to elapse from receipt of the written notice of claim. *See* Fla. Stat. § 768.28(6)(a)–(b), (d); *Broward Cty. Sch. Bd. v. Joseph*, 756 So. 2d 1077 (Fla. 4th DCA 2000) (granting certiorari and requiring trial court to dismiss lawsuit for failure to provide notice). Then, and only then, the claimant may file a lawsuit.

Sovereign immunity relates to subject matter jurisdiction, to the extent that like subject matter jurisdiction, sovereign immunity may be asserted at any time. *Miami-Dade Cnty. v. Garavan*, 434 So. 3d 492, 494 (Fla. 3d DCA 2026), *reh'g denied* (May 28, 2026) (citing *City of Miami v. Robinson*, 364 So. 3d 1087, 1091 (Fla. 3d DCA 2023) ("Much like subject matter jurisdiction, sovereign immunity . . . can be raised at any time.")); *State, Dep't of Highway Safety & Motor Vehicles, Div. of Highway Patrol v. Kropff*, 491 So. 2d 1252, 1254 n.1 (Fla. 3d DCA 1986) ("Sovereign immunity relates to subject matter jurisdiction. Parties may not confer subject matter jurisdiction by waiver, failure to object, or consent where none is given by law. Governmental immunity may be raised at any time."); *Schmauss v. Snoll*, 245 So. 2d 112, 113 (Fla. 3d DCA 1971) ("A state's immunity from suit relates to subject matter jurisdiction . . . . Lack of jurisdiction over the subject matter may be raised at any time[.]").

"Because section 768.28(6) is part of a statutory waiver of sovereign immunity, there must be strict compliance with its requirements." *Morhaim v. State, Dep't of Transp.*, 737 So. 2d 1234, 1237 (Fla. 3d DCA 1999); *Levine v. Dade Cty. Sch. Bd.*, 442 So. 2d 210, 212 (Fla. 1983); *accord Simmons v. Public Health Trust of Miami-Dade Cty.*, 338 So. 3d 1057, 1062 (Fla. 3d DCA 2022). The notice requirement cannot be waived unless expressly authorized by statute. *Simmons*, 338 So. 3d at 1062 (citing *Dukanauskas* v. *Metro. Dade Cty.*, 378 So. 2d 74, 76 (Fla. 3d DCA 1979)).

The Complaint recognizes this statutory requirement, but only superficially. Paragraph 5 alleges that Plaintiff "has performed all conditions precedent, in accordance with § 768.28(6), Florida Statutes," or that such conditions have otherwise "occurred, been performed, been met, been waived, would be futile, or are otherwise inapplicable." Compl. ¶ 5. But under Florida law, "sovereign immunity is the rule, rather than the exception," *Pan Am. Tobacco Corp. v. Dep't of Corrs.*, 471 So. 2d 4 (Fla. 1984), so the burden is on the plaintiff to specifically plead **facts** that plausibly show compliance with Section 768.28(6) in order to overcome the sovereign immunity bar. *See, e.g.*, *Wright v. Polk Cnty. Public Health Unit*, 601 So. 2d 1318, 1319 (Fla. 2d DCA 1992) (holding that plaintiffs' allegation that they "have complied with all conditions precedent to the bringing of this action" was insufficient, without factual support, to state a claim of statutory compliance); *see also generally Levine*, 442 So. 2d at 213 (recognizing that "the complaint must contain an allegation of such notice"); *City of Gainesville v. State, Dep't of Transp.*, 778 So. 2d 519, 530 (Fla. 1st DCA 2001) ("Our supreme court has held that facts on which a waiver of sovereign immunity depends must be pleaded in the complaint.").[5]

The conclusory assertion that all conditions precedent were satisfied cannot substitute for compliance with the statutory prerequisite to suit. In fact, the Complaint contains no factual allegations identifying when statutory notice was provided, to whom it was provided, or whether the notice complied with the requirements of section 768.28(6).

Because Plaintiff did not (and cannot) sufficiently allege that he satisfied a statutory condition precedent to Florida's waiver of sovereign immunity, Counts VII, VIII(a), and X cannot proceed against the City and should be dismissed.

### B. **As to the City: Alternatively and Additionally, Plaintiff's Own Factual Allegations Place the Officers' Alleged Conduct Outside the Scope of the City's Waiver of Sovereign Immunity Under Section 768.28(9)(a).**

[5] As a preview for the Court, Plaintiff did not in fact timely provide the City with the written notice required by section 768.28(6), so amendment of these claims will be futile. The events forming the basis of Plaintiff's tort claims occurred on April 16, 2023. Plaintiff was therefore required to present his notice to the City within April 16, 2026, and no notice letter was provided to the City within the statutory period.

Even if Plaintiff could establish compliance with Section 768.28(6)—which he cannot—the state-law claims against the City fail for the independent reason that the Complaint repeatedly alleges conduct falling squarely within the exception set forth in Section 768.28(9)(a).[6]

A municipality's waiver of sovereign immunity does not extend to acts of a governmental employee "committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). When individual employees' conduct alleged falls within those statutory exceptions, the governmental entity cannot be held vicariously liable. *See, e.g.*, *Fletcher v. City of Miami,* 567 F. Supp. 2d 1389, 1394 (S.D. Fla. 2008) (Altonaga, J.) ("Florida courts have routinely held that a governmental entity may not be held liable where its employee's actions were malicious, in bad faith, or showed reckless and wanton disregard ....").

Here, not only does Plaintiff label the Officers' conduct as intentional or malicious, but Plaintiff's factual allegations, incorporated into his state-law claims, also describe conduct that Plaintiff himself characterizes as deliberate, unjustified, and undertaken with an alleged absence of any legitimate law-enforcement justification. Plaintiff alleges that officers fabricated evidence, committed perjury, prepared false reports, knowingly pursued criminal charges without probable cause, and intentionally violated his constitutional rights. *Cf.* Compl. ¶¶ 81, 84, 99, 190.

In support of his battery claim, Plaintiff alleges that Officer Paige intentionally attempted to force him to the ground despite Plaintiff allegedly posing no threat, and that Officer Carballo Perez thereafter intentionally deployed his taser against Plaintiff while Plaintiff was already on the ground and allegedly posed no resistance. Compl. ¶¶ 59–67. Plaintiff pleads the same theory in support of his false-arrest claim in Count X. Compl. ¶¶ 195–196. Plaintiff similarly characterizes the Officers' alleged conduct as "willful, reckless, callous, intentional, and malicious derogation of the Plaintiff's rights under federal and state law." Compl. ¶ 190.

If these allegations are accepted as true, then the Officers' conduct falls within the exception established by Section 768.28(9)(a), and the City cannot be held liable as a matter of

---

[6] Section IV.B is asserted by the City alone and the Defendant Officers do not join it. Defendant Officers deny that they acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, and nothing in this Section is an admission by, or a characterization on behalf of, any Defendant Officer. As shown in Section IV.G, Defendant Officers assert that the facts actually alleged describe reasonable force and a seizure supported by at least arguable probable cause.

law. Because the Complaint affirmatively alleges conduct excluded from the statutory waiver of sovereign immunity, Counts VII, VIII(a), and X should be dismissed as against the City.

Additionally, Plaintiff inserts an "alternative" allegation that the Officers did not act intentionally, in bad faith, with malicious purpose, or with wanton and willful disregard. *See, e.g.*, Compl. ¶¶ 159, 195. Under *Twombly* and *Iqbal*, legal conclusions and formulaic recitations are not entitled to the assumption of truth. Moreover, courts have "recognized the limits to a plaintiff's ability to advance alternative theories in § 768.28 cases where the factual allegations can only suggest malice or bad faith on the part of the individual defendant." *Terry v. Rodriguez*, No. 09-23726, 2010 WL 2342382, at *2 (S.D. Fla. June 7, 2010); *see also Thomson v. Davenport*, No. 09-21708-CIV-GOLD/MCALILEY, 2010 WL 11601554, at *5 n.9 (S.D. Fla. June 16, 2010) ("While Plaintiff may plead claims in the alternative, she cannot salvage her battery claim by requesting that certain facts alleged in her Amended Complaint be ignored for purposes of certain claims.").

Here, the Complaint, as Plaintiff has chosen to plead it, does not describe conduct that could plausibly fall within the scope of the Officers' employment without implicating Section 768.28(9)(a). The alternative label does not supply a different factual basis upon which the City may be held liable. If those allegations are accepted as true, then the Officers' conduct falls within the exception established by Section 768.28(9)(a), and the City cannot be held liable as a matter of law. Plaintiff cannot simultaneously maintain that the officers acted maliciously, intentionally, and in bad faith while also seeking to impose vicarious liability upon the City for the same conduct. *See Gonzalez v. Metro. Dade Cnty. Pub. Health Tr.*, 651 So. 2d 673, 676 (Fla. 1995) ("The very need to allege and prove willful, wanton or malicious conduct to sustain an action against [an employee] makes the case non-actionable against the county because of the statute which continues to surround governmental units with the shield of sovereign immunity in the face of such conduct.") (quoting *Kirker v. Orange County,* 519 So.2d 682, 684 (Fla. 5th DCA 1988)).

This Court should follow other courts in the district by looking at the substance of the facts alleged, rather than superficial conclusions; such an examination reveals that the state-law claims against the City should be dismissed. *Cf. Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1328 (S.D. Fla. 2018) (finding factual allegations of punching the plaintiff in the face, slamming him on the hood of his car, arresting him without probable cause, and fabricating evidence constitute conduct that can only be described as committed in bad faith); *Alicea v. Miami-Dade County*, No. 13-21549-Bloom, [ECF No. 95], (S.D. Fla. 2014) (determining sovereign immunity barred claim

against the county because the complaint alleged that the officer "made false statements and material omissions" regarding the plaintiff's arrest and "violently pummeled [the plaintiff] in the head, face and torso [which was done] without reasonable suspicion or probable cause."); *Mena v. Miami-Dade Cnty.*, No. 14-20030-CIV, 2014 WL 3667806 (S.D. Fla. July 22, 2014) (dismissing claim against county where factual allegations "that [the officers'] actions–pulling Mr. Mena out of the car, throwing Mr. and Mrs. Mena, beating them, handcuffing them, and arresting them–can only be characterized as actions 'committed in bad faith or with malicious purpose'"); *Nicholson v. City of Miami*, No. 1:22-CV-21268-JLK, 2022 WL 17073684, at *4 (S.D. Fla. Nov. 17, 2022) ("The Court also finds that although Plaintiff does not explicitly characterize [the officer's] conduct as malicious, committed in bad faith, or wanton and willful, Plaintiff has alleged facts about [the officer's] conduct that cannot be characterized as anything other than committed in bad faith. Plaintiff's Complaint alleges that [the officer] pushed and pulled Plaintiff (who was 65 years of age or older at the time) down the hallway by his collar, grabbed and held him against the wall, and slammed him to the floor. . . . [R]egardless of how Plaintiff couches [the officer's] actions in certain parts of his Complaint, the Court determines that [the officer's] actions, as alleged and taken as true, are malicious or committed in bad faith or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.").

Accordingly, because the Complaint affirmatively alleges conduct excluded from the statutory waiver of sovereign immunity, Counts VII, VIII(a), and X should be dismissed as against the City.

**C. <u>Count XI (Against the City Only) is a Shotgun Pleading</u>**

As a threshold pleading matter, Count XI should be dismissed because the Complaint fails to "separat[e] into a different count each cause of action or claim for relief," also known as "commingling" claims. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015); *compare id. and Fla. Carpenters Regional Council v. City of Miami Beach*, No. 09-22329-CIV-ALTONAGA/Brown, 2009 WL 10699575, at *10 (S.D. Fla. Dec. 4, 2009) (concluding complaint violates Rule 10 by mixing legal theories in one count) *with* Count XI (appearing to mix theories of excessive force, malicious prosecution, failure to train, and failure to supervise, if not more).

**D. <u>Count XI Fails to State a Claim for Municipal Liability under *Monell*/ § 1983</u>**

### a. Overview of *Monell* Liability

Count XI should also be dismissed because it fails to adequately allege the City's liability under *Monell*. Following *Iqbal/Twombly*, Plaintiff has the burden to show the plausibility of his claims on the face of the Complaint by identifying actual facts that support the existence of the City's alleged wrongdoing (as distinct from that of the Officers). Plaintiff fails to meet his burden.

To state a claim under 42 U.S.C. § 1983,[7] "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Monell*, 436 U.S. at 694.

It is well-settled that a municipality, like the City, may ***not*** be held vicariously liable for the acts of its employees based on *respondeat superior* under Section 1983. Rather, Plaintiff must allege facts demonstrating he suffered a deprivation of his rights pursuant to a policy or custom authorized by a City final policymaker, which was the moving force behind the deprivation. *See Monell*, 436 U.S. at 694 (concluding that Section 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor"). Following *Monell*, a plaintiff must allege facts proving three elements to establish Section 1983 municipal liability: "(1) that his constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Plaintiff fails to satisfy these requirements.

### b. Plaintiff Has Not Alleged Facts Establishing a Municipal Custom or Policy

Assuming without admitting that Plaintiff has sufficiently alleged that his constitutional rights were violated by the Officers, he has not plausibly alleged that the City—a different and unique legal actor—had a custom or policy that constituted deliberate indifference to Plaintiff's constitutional rights and that caused the alleged excessive force to be used, and the purported initiation of a malicious prosecution.

---

[7] 42 U.S.C. § 1983 provides a remedy for "the deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws" by a "person . . . [acting] under color of any statute, ordinance, regulation, custom, or usage[] of any State or Territory or the District of Columbia[.]"

To allege a custom or policy, a plaintiff must "identify either (1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker for the [municipality]." *Grech v. Clayton Cnty.*, Ga., 335 F.3d 1326, 1329 (11th Cir. 2003); *see also id.* ("The Supreme Court has placed strict limitations on municipal liability under § 1983.")."[T]he simple mention of 'policy and/or custom' is not enough, for a plaintiff must do something more than simply allege that such an official policy exists." *Perez v. Metro. Dade Cnty.*, No. 06-20341-CIV, 2006 WL 4056997, at *2 (S.D. Fla. Apr. 28, 2006) (Moreno, J.) (internal quotations omitted); *accord Rosario v. Miami-Dade Cnty.*, 490 F. Supp. 2d 1213, 1225 (S.D. Fla. 2007) (Ungaro, J.).

A good example of deficient *Monell* pleading can be found in the recent U.S. Court of Appeals for the Eleventh Circuit decision in *Plowright v. Miami Dade County*, 102 F.4th 1358 (11th Cir. 2024). In *Plowright*, the plaintiff alleged that police officers taser-shocked his dog and then needlessly shot and killed the dog, despite the dog being incapacitated from the tasing. *Id.* at 1362. In efforts to impute the officers' actions to the local government (the County), the plaintiff alleged in conclusory fashion that the county "had a county wide custom of shooting … dogs." *Id.* at 1370 (quoting complaint). This bare assertion was insufficient as a matter of law: "Without any additional details about the circumstances of past incidents, however—including whether the dogs in question posed an imminent threat—Plowright failed to allege facts plausibly indicating that there was such a custom or, even if there was, that the custom 'constituted deliberate indifference to [his] constitutional right[s].'" *Id.* (quoting *McDowell*, 392 F.3d at 1289).

In *Brooks v. Scheib*, 813 F.2d 1191 (11th Cir. 1987) the Eleventh Circuit required that an unofficial custom or practice be shown through **pleaded facts** demonstrating prior investigated incidents with findings of wrongdoing, as uninvestigated or unaddressed complaints are insufficient. Conclusory assertions, devoid of ultimate facts, do not suffice to establish an unofficial custom or practice. *See, e.g., Sanchez v. Miami-Dade Cnty.*, No. 06-21717-CIV, 2007 WL 1746190, at *3 (S.D. Fla. Mar. 28, 2007) (King, J.) (finding vague assertion that a "policy, custom, and practice" exists insufficient to survive a motion to dismiss). Plaintiff conclusorily asserts that in the four years preceding the episode involving Plaintiff, "the City was on notice that at least eighteen of its officers had engaged in constitutional violations, including false arrest, excessive force and malicious prosecution." Compl. ¶ 216. Plaintiff, however, fails to allege whether those incidents resulted in a finding of wrongdoing or if they involved the same or similar

facts as the present case. This deficiency is fatal under *Brooks v. Scheib*.

Count XI begins by asserting that the alleged constitutional violations resulted from "longstanding customs and practices of the City permitting and tolerating the use of excessive force and filing of false criminal allegations." Compl. ¶ 199. Nevertheless, Plaintiff fails to allege facts that would plausible establish any such custom or practice.

A few isolated instances would not suffice to meet the high burden of deliberate indifference: "[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be **obvious, flagrant, rampant and of continued duration, rather than isolated occurrences**." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)) (emphasis added); *see also Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015) (Lenard, J.) (concluding that "four isolated shootings" in a nine-month span were not enough to constitute a custom or usage in the absence of a written law or express municipal policy).

Importantly, prior incidents must involve facts substantially similar to those at hand in order to be relevant to a deliberate-indifference claim. *Mercado v. City of Orlando,* 407 F.3d 1152, 1162 (11th Cir. 2005). *Wade v. City of Miami Beach* is particularly instructive. 565 F. Supp. 3d 1248 (S.D. Fla. 2021) (Scola, J.). There, as here, the plaintiff attempted to establish an unofficial municipal custom by pointing to a small number of alleged prior incidents involving alleged misconduct by Miami Beach police officers. *Id.* at 1252–53. The court rejected the theory at the pleading stage, concluding that three prior incidents were merely "largely outdated, isolated incidents" with no substantial similarity to the case at bar and therefore did not permit a reasonable inference of a practice "so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* at 1252 (quoting *Brown*, 923 F.2d at 1481).

Plaintiff's allegations here resemble those in *Wade*. Plaintiff broadly asserts that the City was on notice "that at least eighteen of its officers had engaged in alleged constitutional violations, Compl. ¶ 216, and identifies with factual support only four, factually dissimilar incidents: Wade (2019), Crudup (2021), Maple (2021), and Poitier (2018). Compl. ¶¶ 218–240.

The four incidents Plaintiff describes suffer from the same defects identified in *Wade*. They are temporally scattered, factually disparate, and do not establish a pattern of substantially similar constitutional violations. Indeed, *Wade* treated a six-year-old incident as insufficient to support an inference of a widespread custom and described the plaintiff's three cited incidents, occurring

between three and eleven years earlier, as "largely outdated." 565 F. Supp. 3d at 1252. Here, Plaintiff reaches back to Poitier in 2018—approximately five years before the April 2023 events alleged in this case—and Wade in 2019, approximately four years earlier. If the prior incidents in *Wade* were too isolated and temporally removed to plausibly establish a municipal custom, Plaintiff's similarly sparse collection of incidents here fares no better.

Nor are the four incidents sufficiently alike. *Wade* emphasized that the prior incidents there "largely [did] not concern conduct similar to the conduct alleged" and therefore could not establish notice of the particular constitutional deficiency asserted. *Id.* The same defect is present here. Plaintiff aggregates allegations concerning excessive force, false arrest, and malicious prosecution and treats them collectively as evidence of a single municipal custom. But those theories concern materially different conduct. An allegation that an officer used excessive force does not place the City on notice of a widespread practice of fabricating evidence or pursuing charges without probable cause, just as an allegation concerning an improper arrest does not establish a municipal custom authorizing excessive force. This lack of similarity independently defeats Plaintiff's attempt to establish deliberate indifference. Prior incidents must involve substantially similar circumstances to place a municipality on notice of the particular constitutional deficiency alleged. *Mercado*, 407 F.3d at 1162; *Gold*, 151 F.3d at 1350–51; *Wade*, 565 F. Supp. 3d at 1252; *see also Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1373–75 (S.D. Fla. 2013) (Lenard, J.) (rejecting *Monell* theory where "many of the alleged incidents bear little to no factual similarity to the instant case"). Moreover, Plaintiff does not (and cannot) allege that any prior incidents involved the same officers; therefore, those incidents cannot plausibly support his failure-to-supervise claim.

Moreover, in three of these instances, the City also settled the claims brought by the plaintiffs, *see* Compl. ¶¶ 222, 227, 235,[8] and there is no allegation (nor could there be) that the City admitted liability in those settlements. Prior claims that were not investigated or resulted in no finding of wrongdoing are not sufficient to plausibly allege a municipal custom. *See Scheib*,

---

[8] Plaintiff alleges "upon information and belief" that the City also settled Poitier's claim. Compl. ¶ 240. But "[f]actually unsupported allegations based 'on information and belief' are not entitled to the assumption of truth." *Hoti v. Garten*, No. 18-CV-80657-Rosenberg/Reinhart, 2021 WL 3482979, at *5 (S.D. Fla. July 21, 2021) (citing *Scott v. Experian Info. Sols.*, No. 18-CV-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) (Altonaga, J.) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.")).

813 F.2d at 119. Additionally, in *Buress v. City of Miami*, the court held as a matter of law that settlement agreements—particularly those that expressly disclaim any admission of liability—cannot be relied upon to establish a custom or practice under *Monell*. No. 20-23078-CIV, 2025 WL 1231951, at *7 (S.D. Fla. Apr. 29, 2025); *see also Buckler v. Israel, 680 F. App'x 831,* 836 (11th Cir. 2017) ("[t]hose suits that were settled or voluntarily dismissed do not, without admissions of liability, put [Broward County] on notice of any pattern of constitutional violations."); *Simmons v. Bradshaw,* 879 F.3d 1157, 1168 (11th Cir. 2018) ("the district court noted correctly that settlement agreements are not competent evidence that Sheriff Bradshaw condoned the actual use of excessive force."); *Gonzalez v. City of Miami*, Case No. 1:22-cv-21587-KMM, 2023 WL 2030635, at *2 (S.D. Fla. Feb. 14, 2023) (Moore, J.) (quoting *Buckler*, 680 F.App'x at 836) ("[s]ettled cases do not put a municipality on 'notice of any pattern of constitutional violations.' ").

Moving from the general to the specific, Plaintiff's cited incidents do not establish a municipal custom relevant to the conduct alleged here. Prio prior incidents need to involve factual situations substantially similar to the case at hand ; allegations of "excessive force" at a high level of generality are insufficient.

Plaintiff's cited incidents do not meet that standard. Wade and Crudup involved discrete uses of force against restrained individuals, while Maple likewise concerned an allegedly improper use of force during a police encounter. None involved conduct substantially similar to the alleged use of a taser against Plaintiff following a traffic stop, much less the allegedly false criminal allegations underlying Plaintiff's separate malicious-prosecution theory. The Potier incident, which occurred years earlier and was later settled, is likewise not alleged to involve substantially similar circumstances. Nor does the dismissal of criminal charges establish wrongdoing by the City.

Thus, Plaintiff does not allege a pattern of substantially similar conduct sufficient to establish a widespread municipal custom or to place a City policymaker on notice of such a custom.

Plaintiff fails to plead facts demonstrating that these incidents constituted findings of wrongdoing by the City sufficient to establish a course of substantially similar conduct known to a City policymaker. They therefore do not plausibly establish municipal notice of a widespread unconstitutional practice. Accordingly, Plaintiff cannot aggregate disparate allegations, lawsuits, and settlements and label the resulting hodgepodge a municipal "custom" with a high degree of abstraction and generality. Accordingly, Plaintiff fails to allege the kind of "obvious, flagrant, [and]

rampant" pattern of similar misconduct required to establish a municipal custom. *Cf. Parnell*, 193 F.3d at 1269.

**c. <u>Plaintiff Failed to Adequately Allege a Failure to Train and /or to Show Deliberate Indifference</u>**

A "[m]unicipal policy or custom may include a failure to provide adequate training if the deficiency 'evidences a deliberate indifference to the rights of its inhabitants.'" *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1293 (11th Cir. 2009) (quoting *Canton*, 489 U.S. at 385). "As our decision in *Canton* makes clear, 'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). To meet the "deliberate indifference" standard, a plaintiff must allege that "the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998); *see also Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986) ("To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality. Normally random acts or isolated incidents are insufficient to establish a custom or policy."); *see also Wade*, 565 F. Supp. 3d at 1253 (holding that to survive dismissal, the plaintiff was required to allege facts permitting an inference that the City knew of a need to train or supervise and deliberately chose not to act, ordinarily though actual knowledge or multiple similar incidents demonstrating both knowledge and deliberate indifference).

Plaintiff does not identify any particular training policy that was omitted or inadequate. He does not allege facts demonstrating what training the officers received, how that training was constitutionally deficient, or how a different training program would have prevented the alleged constitutional violations. Instead, Plaintiff reasons backwards from the alleged incident: because officers allegedly violated his constitutional rights, the City must have inadequately trained them. That is precisely the type of respondeat-superior reasoning that *Monell* forbids.

The Complaint also does not allege a pattern of sufficiently similar prior constitutional violations that would have placed the City on notice of an obvious need for different training. As discussed above, Plaintiff's cited incidents are few, factually disparate, and, in several instances, resulted in no-liability settlements rather than findings of constitutional wrongdoing. Plaintiff also

does not, and cannot, allege that any of the prior incidents involved the same officers; thus these prior incidents certainly cannot make a plausible Plaintiff's failure-to-train or supervise claim that could show a deliberate indifference by any policymaker.

Accordingly, Plaintiff failed to adequately allege a municipal policy, custom or widespread pattern or the City's deliberate indifference, as required under *Monell.*

**d. <u>Plaintiff Fails to Identify a Final Policymaker</u>**

Even if there were an adequate showing of any pattern, custom or practice (and there is none), the alleged custom must be a "widespread practice that . . . is so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (cleaned up). To establish that a widespread practice is functionally sanctioned by the municipality, the plaintiff must demonstrate that the custom or practice was effectuated "through the repeated acts of a final policymaker for the [municipality]." *Grech*, 335 F.3d at 1329. The plaintiff "must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused that particular constitutional violation in issue." *Id.* at 1330; *see Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir. 1996) ("Only those officials who have final policymaking authority may render the municipality liable under § 1983.").

Plaintiff here fails to identify any final policymaker, let alone a policymaker who undertook any acts, much less "repeated acts," to establish any purported unofficial custom. Gravely, Plaintiff does not allege that any specific final policymaker for the City knew of any of the alleged (and again, non-particularized) "customs" and deliberately failed to act. *Grech*, 335 F.3d at 1329; *see also Wade*, 565 F. Supp. 3d at 1252 ("Moreover, the plaintiff must allege that the final policymaker for the county knows about the custom but failed to stop it." (cleaned up)).

This case is therefore like *Marantes v. Miami-Dade County*, in which the Eleventh Circuit affirmed the dismissal of a *Monell* claim where the plaintiff's sole contention was that the local government's "internal affairs process is ineffective, which in turn sends an implicit message to police officers that they can abuse civilians without punishment." 649 F. App'x 665, 673 (11th Cir. 2016). The plaintiff in *Marantes* did not allege sufficient facts to render that contention plausible, *see id*., and neither does Plaintiff here.

**e. Plaintiff Fails to Allege Facts Tending to Show Causation**

Finally, a plaintiff must plead facts showing that a municipality's policy or custom was the cause of the constitutional violation she suffered. *McDowell*, 392 F.3d at 1289. *See Rodriguez v. Quinones*, 508 F. Supp. 3d 1198 (S.D. Fla. 2020) ("The plaintiff bears the burden of establishing the causal link between a government policy or custom and the injury which is alleged."); *see also Williams v. City of Miami*, No. 21-23287-Civ-Scola, 2021 WL 4990005, at *4 (S.D. Fla. Oct. 27, 2021) ("Williams does not allege, other than in broad conclusory terms, how the City's failure to supervise and discipline officers in general contributed to Officers Hernandez, Allen, and Gonzalez beating him on September 22, 2019."). Plaintiff must show the policy was the "moving force." *Monell*, 436 U.S. at 694.

Here, Plaintiff alleges the existence of a City custom and then simply attributes the individual officers' conduct to that purported custom. But he does not plead facts explaining how any particular City policy, training deficiency, disciplinary decision, or action of a final policymaker caused Officer Carballo Perez to deploy his taser or caused the individual officers allegedly responsible for Plaintiff's prosecution to make false statements. The alleged causal relationship is therefore conclusory and not supported by ultimate facts needed to render it plausible. Accordingly, Plaintiff failed to adequately allege that any City's policy was the moving force behind his alleged injuries. Count XI should therefore be dismissed.

**E. As to the City: Count XI Should Be Dismissed to the Extent it Asserts Municipal Liability for Malicious Prosecution Because Plaintiff Cannot Establish a Favorable Termination of the Criminal Proceedings**

Count XI further fails because Plaintiff cannot establish the favorable termination element necessary to support a federal malicious prosecution claim. "The constituent elements of the common law tort of malicious prosecution, as element of § 1983 malicious prosecution claim, are (1) a criminal prosecution instituted or continued by the present defendant, (2) with malice and without probable cause, (3) that terminated in the plaintiff accused's favor, and (4) caused damage to the plaintiff accused." *Grider v. City of Auburn, Ala.,* 618 F.3d 1240 (11th Cir. 2010).

Here, the criminal proceedings were not terminated because the State abandoned the prosecution or because a court determined Plaintiff was innocent. Rather, the criminal charges were dismissed only after Plaintiff entered and successfully completed a pretrial diversion program

that required him to satisfy conditions imposed by the State, including participation in anger-management programming. *See* Exhibits 1 and 2.

A dismissal obtained through completion of a negotiated diversion agreement is materially different from a dismissal reflecting a bona fide determination favorable to the accused. Plaintiff obtained dismissal only after agreeing to undertake affirmative obligations in exchange for the State's agreement to dismiss the charges. The criminal proceedings therefore ended through a bargained-for resolution rather than through a unilateral abandonment of the prosecution. *See Gindt v. LifeHope Labs*, No. 1:22-CV-03198-SCJ, 2023 WL 6194079, at *5 (N.D. Ga. May 12, 2023) (holding that a plaintiff failed to allege that the criminal proceedings terminated in his favor, when the plaintiff had entered and completed a Pretrial Diversion Program, and the charges were dismissed only after successful completion of the program).

Because Plaintiff cannot establish that the criminal proceedings terminated in a manner sufficient to support a federal malicious prosecution claim, Count XI should be dismissed to the extent it is predicated upon malicious prosecution.

### F. Plaintiff Cannot Recover Punitive Damages Against the City

The Complaint additionally demands punitive damages against the City under Count XI. That relief is unavailable as a matter of law. The general rule is that punitive damages are not allowed against a municipality unless expressly authorized by statute. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981). Florida law likewise expressly excludes punitive damages from the State's limited waiver of sovereign immunity. § 768.28(5), Fla. Stat. Accordingly, to the extent Plaintiff seeks punitive damages against the City, that demand should be dismissed or stricken.

### G. The Claims Against the Defendant Officers Should Be Dismissed

#### a. The Counts Against the Defendant Officers Are Shotgun Pleadings.

The defect identified in Section IV.C pervades the counts against the Defendant Officers. Counts III and IV recite the elements of malicious prosecution against three "Defendants" collectively without saying what any one of them did, and the only officer-specific allegation in Count IV concerns an officer who is not named in it. Compl. ¶¶ 110–12, 118–20. Count VIII(b) combines two distinct uses of force and three differently situated officers, including Officer Paige as to his own alleged force. *Id.* ¶¶ 162–63. Count IX merges an investigatory stop, a handcuffing, and an arrest against three officers, two of whom are not alleged to have been present for any of

them. *Id.* ¶¶ 177–87. Counts IV, IX, and X each incorporate fragments of other counts, *id.* ¶¶ 117, 174, 193, while the Complaint sues a non-party ("Savinon"), describes Officer Crews in the paragraph identifying Officer Tucci, and attributes the damages in three counts to officers not named in them, *id.* ¶¶ 10, 16, 154, 197, 241. This is the practice of "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts." *Weiland*, 792 F.3d at 1323. It matters here because qualified immunity must be decided officer by officer. *Alcocer*, 906 F.3d at 951.

**b. Counts III and IV Fail Because Plaintiff Was Not Seized Pursuant to Legal Process and Pleads No Facts as to Each Defendant Officer.**

A Fourth Amendment malicious prosecution claim requires both the elements of the common law tort and a seizure "pursuant to legal process." *Williams v. Aguirre*, 965 F.3d 1147, 1157–58 (11th Cir. 2020). A warrantless arrest is a seizure without legal process and therefore belongs to a false arrest claim and cannot supply the seizure element of malicious prosecution. *Id.* at 1158; *Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004). Neither can the ordinary conditions of pretrial release, such as posting bond and appearing in court. *Kingsland*, 382 F.3d at 1235–36.

Plaintiff alleges that he was "arrested, jailed, and charged," Compl. ¶ 68, and then, in conclusory terms, that he was "unlawfully seized as a result of the criminal proceeding." *Id.* ¶¶ 114, 122. Plaintiff identifies no warrant, no judicial determination of probable cause, and no detention following one. The state court docket shows why: surety bonds were issued on April 16, 2023, which was the day of the arrest and three days before the case was filed. Ex. 1 (Docket Entries 1, 2, 4). A warrantless arrest followed by release on bond is precisely what *Kingsland* held insufficient. *Arguendo*, even had Plaintiff alleged a seizure pursuant to legal process, he would have to show that the particular charges he challenges caused it. *See Chiaverini v. City of Napoleon*, 602 U.S. 556 (2024); *Williams*, 965 F.3d at 1165. Count III alleges no seizure attributable to the DUI charge and Count IV alleges no seizure attributable to the felony charges. At a minimum, no clearly established law treats same-day release on bond after a warrantless arrest as a seizure pursuant to legal process, and therefore, the Defendant Officers named in these counts are entitled to qualified immunity.

Counts III and IV also fail to allege what each Defendant Officer did. Nothing in the Complaint connects Officer Crews or Sergeant Fernandez to the felony charges, as every allegation

about them concerns roadside exercises and a breath test. Compl. ¶¶ 75–79, 86. As to the DUI charge, the one act attributed to Sergeant Fernandez is pleaded in the alternative: either he told Officer Crews that Plaintiff refused roadside exercises or Officer Crews wrote that on his own, *id.* ¶ 77, and an allegation that one of two defendants did something does not plausibly allege that either did. *See Iqbal*, 556 U.S. at 678. Officer Crews is alleged to have documented a breath-test refusal, Compl. ¶¶ 78–79, but a refusal is not an element of DUI, Fla. Stat. § 316.193(1), and Plaintiff does not allege that the charge rested on it. As to Officer Lorenzo, the Complaint's own narrative describes a physical struggle in which Plaintiff turned away when Officer Paige took his arm, was moving on the ground when told to stop, and could not be handcuffed by three officers, *id.* ¶¶ 46, 55, 58, 62. Moreover, the Complaint offers only the conclusion that Defendants "knew" the arrest affidavit's account of that struggle was false. *Id.* ¶¶ 85, 100. The fact that one officer administered the oath on another's report, *id.* ¶ 81, is a routine statutory function, not a fact suggesting knowledge of falsity. *See* Fla. Stat. § 117.10.

c. **Counts I and II Fail to Allege a Bona Fide Termination, Legal Cause, or the Absence of Probable Cause.**

Florida malicious prosecution requires, among other elements, that the defendant was the legal cause of the prosecution, that probable cause was absent, and that the proceeding ended in a "bona fide termination" in the plaintiff's favor. *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994). A nolle prosequi that the accused bargained for is not a bona fide termination, *id.* at 1356, nor is a termination for "considerations other than the merits." *Valdes v. GAB Robins N. Am., Inc.*, 924 So. 2d 862, 866 (Fla. 3d DCA 2006). "Alleging only that a prior action ended favorably, is not enough . . ." *Id.*

Plaintiff alleges only that the DUI and felony cases were "dismissed." Compl. ¶¶ 91, 105. That is insufficient under *Valdes*, and as to the felony case, the public record forecloses amendment. After the case was set for trial, Plaintiff executed a speedy-trial waiver, "agreed to all program conditions," and entered the State Attorney's pretrial diversion program on the battery and resisting-without-violence charges; the State entered a nolle prosequi only upon his "successful completion" of that program. *See* Exs. 1, 2. That is a negotiated disposition, not an abandonment on the merits. The State's earlier decision to take no action on the resisting-with-violence charge does not alter the analysis, because the element looks to how the *proceeding* terminated, *Mancusi*, 632 So. 2d at 1355, and this proceeding continued on the charges arising

from the same encounter until Plaintiff bargained for its end.[9]

Counts I and II also fail for the reasons stated in Section IV.G.b. Specifically, the Complaint pleads no facts showing that Officer Crews or Sergeant Fernandez was the legal cause of the felony prosecution (Count II), that Sergeant Fernandez did anything in connection with the DUI prosecution beyond an either/or allegation (Count I), or that any Defendant Officer acted without probable cause and with malice.

**d. Count IV Fails to State a Claim for Excessive Force Against Officer Paige.**

Count VI challenges a single takedown. Compl. ¶ 136. By Plaintiff's own account, this was a 2:11 a.m. traffic stop of a driver "twice [Officer Paige's] size." *Id.* ¶¶ 34, 136. Plaintiff was not handcuffed and had not been searched, and when Officer Paige took hold of his arm, Plaintiff "turned his head and upper body away from the truck." *Id.* ¶¶ 45–46. Officer Paige then took him to the ground, where he "landed on his back." *Id.* ¶¶ 47, 52. No injury is attributed to the takedown.

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The Eleventh Circuit has repeatedly held that taking an un-handcuffed suspect to the ground to secure him is reasonable, even for a minor offense and without violent resistance. *Charles v. Johnson*, 18 F.4th 686, 699–700 (11th Cir. 2021) (tackle of suspect who pulled away from officer's grip to avoid handcuffing); *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003); *Nolin v. Isbell*, 207 F.3d 1253, 1257–58 (11th Cir. 2000). Plaintiff's explanation for turning away is that he had not been told why he was stopped or that he would be handcuffed, which goes to his state of mind, not to what a reasonable officer would perceive – and the Constitution requires neither announcement. *See Devenpeck v. Alford*, 543 U.S. 146, 155 (2004). Nor do the model policies of private organizations, Compl. ¶¶ 18–24, define Fourth Amendment reasonableness. *See Whren v. United States*, 517 U.S. 806, 815 (1996).

Two further theories in Count VI fail as a matter of law. To the extent Plaintiff contends the force was excessive because the seizure itself was unlawful, Compl. ¶¶ 137, 139, that theory is subsumed in his unlawful seizure claim and is not a discrete excessive force claim. *Bashir v.*

---

[9] Florida's bona fide termination element is more demanding than the federal favorable-termination standard, which asks only whether the prosecution ended without a conviction. *Thompson v. Clark*, 596 U.S. 36, 39 (2022); *Laskar v. Hurd*, 972 F.3d 1278, 1295 (11th Cir. 2020). Counts III and IV fail for the independent reasons stated in Section IV.G.b.

*Rockdale Cnty.*, 445 F.3d 1323, 1331–32 (11th Cir. 2006); *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000). Moreover, Officer Paige cannot be held liable for another officer's later taser deployments on the theory that the takedown "set in motion" what followed, Compl. ¶¶ 146–47, as each officer answers only for his own acts. *Alcocer*, 906 F.3d at 951. At a minimum, no clearly established law prohibited this takedown, and Officer Paige is entitled to qualified immunity.

**e. Count V Fails to State a Claim for Excessive Force Against Officer Carballo Perez.**

Count V depends on the label that Plaintiff was "complying" when the taser was deployed. Compl. ¶¶ 59, 67, 127. The facts alleged describe something else. A traffic stop had become a ground struggle in which officers holding Plaintiff's arms and leg had been unable to handcuff him. *Id.* ¶ 55. Officer Carballo Perez arrived mid-struggle, directed the other officers to step back, and ordered Plaintiff to "stop moving" – a command that presupposes movement. *Id.* ¶¶ 51, 57–58. Plaintiff was then unsecured, unsearched, and free of the officers' grasp. He remained un-handcuffed before the second deployment, which came only after officers had "again grabbed" him without securing him. *Id.* ¶¶ 62, 67. Importantly, Plaintiff does not allege that he ever put his hands behind his back as commanded. *Id.* ¶¶ 56, 60, 64.

Plaintiff attributes his non-compliance to "conflicting commands." However, reasonableness is judged from the perspective of an officer on the scene in circumstances that are "tense, uncertain, and rapidly evolving," not by the suspect's reasons for failing to comply. *Graham*, 490 U.S. at 396–97. The Eleventh Circuit has upheld taser use against un-handcuffed suspects who resisted efforts to secure them. *Charles*, 18 F.4th 686; *Hoyt v. Cooks*, 672 F.3d 972, 980 (11th Cir. 2012); *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004). The decisions finding taser use excessive involved suspects who were not resisting. *See Fils v. City of Aventura*, 647 F.3d 1272, 1289–90 (11th Cir. 2011); *Oliver v. Fiorino*, 586 F.3d 898, 906–07 (11th Cir. 2009). Because no materially similar precedent clearly established that deploying a taser against an unsecured suspect after a failed multi-officer handcuffing attempt violates the Fourth Amendment, Officer Carballo Perez is entitled to qualified immunity.

**f. Count VIII(b) Fails to State a Claim for Failure to Intervene.**

An officer is liable for failing to intervene only if excessive force was used and he was "in a position to intervene" yet failed to do so. *Priester v. City of Riviera Beach*, 208 F.3d 919, 924–25 (11th Cir. 2000). There is no such opportunity where the force is sudden or brief. *Hadley v.*

*Gutierrez*, 526 F.3d 1324, 1330–31 (11th Cir. 2008); *Brown v. City of Huntsville*, 608 F.3d 724, 740 n.25 (11th Cir. 2010). Count VIII(b) fails first because Counts V and VI fail. *Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019). It also fails on its own terms.

The takedown, Plaintiff alleges, came "without warning." Compl. ¶¶ 47, 138. No officer could have prevented it; the only act attributed to Captain Feldman at that moment is that he held Plaintiff and slowed his descent. *Id.* ¶ 50. Furthermore, Officer Paige could not "intervene" in his own alleged force. *Id.* ¶ 162. As to the taser, the first deployment came "[a]pproximately two seconds" after Officer Paige and Captain Feldman complied with the instruction to step back, and the second came immediately after an instruction to release Plaintiff. *Id.* ¶¶ 57–59, 67. Nothing alleged suggests either officer had the time or means to stop an instantaneous deployment. Officer Lorenzo had been on scene "no more than 15 seconds" and had witnessed nothing that preceded his arrival. *Id.* ¶ 66. His alleged remark is not alleged to have caused Officer Carballo Perez, who had already deployed his taser once, to do anything. No clearly established law required more of any of these officers.

**g. Counts IX and X Fail to State a Claim for Unlawful Seizure or False Arrest.**

*Officers Tucci and Lorenzo.* Liability for an unlawful arrest requires personal participation in it. *Brown*, 608 F.3d at 737. An officer who did not make the arrest has no duty to investigate its basis and is liable only if he knew it lacked any constitutional basis and participated anyway. *Wilkerson v. Seymour*, 736 F.3d 974, 979–80 (11th Cir. 2013). Officer Tucci is alleged only to have "transported Cox to the hospital and then to TGK." Compl. ¶ 187. Officer Lorenzo arrived after Plaintiff had been stopped, removed from his vehicle, and taken to the ground. *Id.* ¶ 63. Officer Lorenzo's later paperwork is the subject of the malicious prosecution counts, not a seizure. Neither is alleged to have stopped, detained, or arrested anyone, and Counts IX and X should be dismissed as to both.

*Officer Paige.* Count IX's central allegation that the stop lacked reasonable suspicion or probable cause, Compl. ¶ 178, is a legal conclusion entitled to no presumption of truth. *Iqbal*, 556 U.S. at 678–79. The Complaint says nothing about how Plaintiff was driving, what preceded the stop, or what basis for the stop appears in the arrest affidavit it otherwise describes in detail. None of the statements Plaintiff identifies as false concerns the basis for the stop. *See* Compl. ¶¶ 72–81. A lawfully stopped driver may be ordered out of his vehicle and may be handcuffed for officer safety without converting the stop into an arrest. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977);

*United States v. Acosta*, 363 F.3d 1141, 1146–47 (11th Cir. 2004). Moreover, once Plaintiff turned away as Officer Paige took his arm, Compl. ¶ 46, a reasonable officer could have believed there was probable cause to arrest for resisting or obstructing an officer. *See* Fla. Stat. § 843.02. Arguable probable cause for any offense defeats the federal claim, *Brown*, 608 F.3d at 734–35; *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023), and probable cause bars the state claim, *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998).

**h. The State Law Battery and False Arrest Claims Against the Defendant Officers Fail (Counts VII, VIII(a), and X).**

Under Florida law, an officer's use of force in making an arrest is presumed to be in good faith, and he is liable for battery only where the force is "clearly excessive." *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996); *Davis v. Williams*, 451 F.3d 759, 768 (11th Cir. 2006). The inquiry tracks the Fourth Amendment analysis, so Counts VII and VIII(a) fail as to the Defendant Officers named in these counts for the reasons stated in Sections IV.G.d and IV.G.e. Count VIII(a) also never identifies the contact on which it is based. Compl. ¶ 156. Count X fails as to the Defendant Officers against whom it is alleged for the reasons stated in Section IV.G.g. Moreover, as to Officer Tucci, who is alleged only to have driven Plaintiff to the hospital and the jail, the Complaint pleads no fact that could overcome the personal immunity conferred by Fla. Stat. § 768.28(9)(a).

**i. Plaintiff's Demands for Injunctive Relief and Attorneys' Fees Should Be Stricken.**

Every count against the Defendant Officers other than Counts VII, VIII(a), and X demands injunctive relief. However, Plaintiff alleges no real and immediate threat of future injury and therefore lacks standing to seek it. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983). Counts I and II, which arise under Florida common law, also demand attorneys' fees for which no statutory or contractual basis exists. Those demands should be dismissed or stricken.

## V. CONCLUSION

As to the City, Counts VII, VIII(a), and X arise under Florida tort law but Plaintiff failed to timely comply with the mandatory presuit notice requirements of Florida Statutes § 768.28(6). Those claims therefore are barred by sovereign immunity. Likewise, these Counts fail to allege any liability on the City under Section 768.28(9)(a).

Count XI likewise should be dismissed because, not only is it a shotgun pleading, it fails to plausibly allege municipal liability under *Monell*. Plaintiff identifies no official City policy authorizing the alleged constitutional violations; his handful of prior incidents does not establish a persistent and widespread custom; several of those incidents resulted only in no-liability settlements or otherwise lack findings of constitutional wrongdoing. Plaintiff likewise fails to allege facts demonstrating deliberate indifference, a specific deficiency in City training, a deliberate decision not to correct a known training deficiency, action or ratification by a final policymaker, or that any municipal policy was the moving force behind Plaintiff's alleged injuries.

The claims against the Defendant Officers should be dismissed as well. Plaintiff was never seized pursuant to legal process (Counts III and IV), he alleges no bona fide termination and no facts as to each Defendant Officer's role (Counts I and II), the force he describes was reasonable under the circumstances he alleges (Counts V, VI, VII, and VIII(a)), no Defendant Officer had a realistic opportunity to intervene (Count VIII(b)), and the seizure claims name officers who seized no one and otherwise rest on a legal conclusion (Counts IX and X). Moreover, Defendant Officers are entitled to qualified immunity on every federal claim.

If any of the claims survive dismissal (and none should), the Court at a minimum should strike Plaintiff's claim for punitive damages against the City, as such relief is unavailable as a matter of law.

WHEREFORE, Defendants respectfully request that this Court dismiss the Complaint in its entirety or, at a minimum, strike Plaintiff's demand for punitive damages against the City, and grant such further relief as this Court deems just and proper.

Respectfully submitted,

RICARDO DOPICO, CITY ATTORNEY
CITY OF MIAMI BEACH
1700 CONVENTION CENTER DRIVE
4th FLOOR-LEGAL DEPARTMENT
MIAMI BEACH, FLORIDA 33139
TEL: (305) 673-7470
FAX: (305) 673-7002

By: /s/*Henry J. Hunnefeld*

HENRY J. HUNNEFELD
Deputy City Attorney
henryhunnefeld@miamibeachfl.gov
Florida Bar No. 343811
FREDDI R. MACK
First Assistant City Attorney
Florida Bar No. 111623
freddimack@miamibeachfl.gov
CARLA POMPA
Assistant City Attorney
carlapompa@miamibeachfl.gov
Florida Bar No. 1069945

*/s/Robert L. Switkes*
Robert L. Switkes, Esq.
Florida Bar No.: 241059
rswitkes@switkeslaw.com
*/s/Bradley F. Zappala*
Bradley F. Zappala, Esq.
Florida Bar No.: 111829
bzappala@switkeslaw.com
**SWITKES & ZAPPALA, P.A.**
407 Lincoln Road, Penthouse SE
Miami Beach, Florida 33139
Tel: (305) 534-4757
Fax: (305) 538-5504
*Counsel for Defendant Officers*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this **17th** day of September, 2026, I electronically filed the foregoing *Motion to Dismiss* with the Clerk of the Court using CM/ECF, which in turn will automatically generate a Notice of Electronic Filing to all parties in the case who are registered users of the CM/ECF system.

By: /s/*Henry J. Hunnefeld*
HENRY J. HUNNEFELD