UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 26-cv-23906-JTK

JULIAN COX,

Plaintiff,

vs.

CITY OF MIAMI BEACH, a municipal corporation; LEON PAIGE, individually; JOSE CARBALLO PEREZ, individually; STEVEN FELDMAN, individually; KEVIN LORENZO, individually; JAVIER FERNANDEZ, individually; JOSE TUCCI, individually; CURTIS CREWS, individually,

Defendants.
_______________________________/

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendant CITY OF MIAMI BEACH, FLORIDA (the "City"), and Defendants LEON PAIGE, JOSE CARBALLO PEREZ, STEVEN FELDMAN, KEVIN LORENZO, JAVIER FERNANDEZ, JOSE TUCCI, and CURTIS CREWS (collectively, the "Defendant Officers," and together with the City, "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6), move to dismiss Plaintiff JULIAN COX's ("Plaintiff") First Amended Complaint [ECF No. 35] (the "Amended Complaint"). In support, Defendants state as follows:

## I. INTRODUCTION

Plaintiff's Amended Complaint arises from an April 16, 2023 encounter with officers of the Miami Beach Police Department ("MBPD"). Plaintiff alleges that he was unlawfully stopped, subjected to excessive force, arrested, and subsequently prosecuted based upon fabricated criminal allegations. Plaintiff further attempts to attribute the Defendant Officers' alleged conduct to the City through purported longstanding "customs and practices" of tolerating excessive force, fabricating criminal accusations, and failing to investigate or discipline officers. The Amended Complaint asserts twelve causes of action against the City and seven Defendant Officers:

1. **Count I:** Florida-law Malicious Prosecution arising from the DUI prosecution, against Officers Lorenzo, Crews, Fernandez, and Paige;
2. **Count II:** Florida-law Malicious Prosecution arising from the felony prosecution, against Officers Lorenzo, Crews, Paige, and Fernandez;
3. **Count III:** Fabrication of Inculpatory Evidence under 42 U.S.C. § 1983 and the Fourth and/or Fourteenth Amendments, against Officers Lorenzo, Crews, and Fernandez;
4. **Count IV:** Excessive Force under Section 1983 and the Fourth Amendment, against Officer Carballo-Perez;
5. **Count V:** Excessive Force under Section 1983 and the Fourth Amendment, against Officer Paige;
6. **Count VI:** Florida-law Battery against Officer Carballo-Perez or the City, pleaded in the alternative;
7. **Count VII:** Florida-law Battery against Officer Paige or the City, pleaded in the alternative;
8. **Count VIII:** Failure to Intervene under Section 1983 and the Fourth Amendment, against Officers Paige, Feldman, and Lorenzo;

9. **Count IX:** Unreasonable Search and Seizure under Section 1983 and the Fourth Amendment, against Officers Paige, Lorenzo, and Tucci;
10. **Count X:** Florida-law False Imprisonment/False Arrest against Officers Paige, Lorenzo, Tucci, Fernandez, Carballo-Perez, and Crews, or the City, pleaded in the alternative;
11. **Count XI:** Excessive Force under Section 1983 and the Fourth Amendment, against the City; and
12. **Count XII:** Deprivation of Liberty under Section 1983 and the Fourth and/or Fourteenth Amendments, against the City.

* * * * * * * * * * * *

**As to the City**, the Amended Complaint fails to state viable claims for several independent reasons.

*First*, Plaintiff's state-law claims against the City, Counts VI, VII, and X, are barred by Florida Statutes section 768.28(9)(a). Plaintiff does not merely allege that the Defendant Officers mistakenly exercised their judgment or negligently performed their duties. Rather, despite Plaintiff's attempt to the counts in the alternative, from the opening paragraph of the Amended Complaint, Plaintiff expressly alleges that the officers deliberately and violently seized him, knowingly fabricated criminal accusations, and incorporated those falsehoods into sworn official documents to conceal and justify their misconduct. These allegations, taken as true, describe intentional wrongdoing allegedly committed in bad faith and with malicious purpose, thereby precluding the imposition of tort liability upon the City.

*Second*, Counts XI and XII fail to state a plausible claim for municipal liability under Section 1983 and Monell. Although, compared to his original complaint, Plaintiff has expanded his allegations concerning prior incidents involving MBPD officers, the Amended Complaint still fails to establish that the City maintained an official policy or sufficiently widespread and permanent custom that was the moving force behind the alleged constitutional violations.

Plaintiff relies upon a collection of prior incidents involving different officers, different circumstances, and different forms of alleged misconduct, including civil lawsuits resolved through settlement, allegations that did not result in findings of wrongdoing, and certain incidents resulting in criminal proceedings against individual officers. However, allegations against individual officers, without sufficient facts connecting those incidents to a municipal policy or custom, do not establish municipal liability. Moreover, Plaintiff fails to adequately allege that a

City final policymaker adopted, directed, authorized, or deliberately disregarded the specific constitutional violations alleged here. Nor does Plaintiff establish the requisite causal connection between the City's purported customs and the actions of the Defendant Officers during the April 16, 2023 encounter.

**As to the Defendant Officers**, the individual-capacity claims fail in substantial part. Count III fails because Plaintiff, who was arrested without a warrant and bonded out before first appearance, never suffered a seizure pursuant to legal process. Count II fails because Plaintiff entered pretrial intervention, which is not a bona fide termination under Florida law. Counts IX and X fail as to Officer Tucci, whose only alleged act is transporting Plaintiff after his arrest, and Count X fails as to the officers who arrived after the arrest was complete. Count VIII fails as to Captain Feldman, whom Plaintiff himself alleges slowed the takedown and was pulled away before the Taser was deployed. Counts IV through VIII fail because the body-worn camera footage Plaintiff attached to his own pleading shows him refusing commands, struggling against handcuffing, and actively resisting, unrestrained, when he was tased. Finally, Counts I and II are impermissibly group-pleaded as to Officer Paige.

Accordingly, Counts VI, VII, X, XI, and XII should be dismissed as against the City, and Counts I through X should be dismissed as against the Defendant Officers to the extent set forth in Part IV – Defendant Officers' Motion below.

## II. FACTUAL ALLEGATIONS[1]

On April 16, 2023, at approximately 2:11 a.m., Officer Paige initiated a traffic stop of Plaintiff near Dade Boulevard and Meridian Avenue in Miami Beach. Am. Compl. ¶¶ 110–12. Plaintiff alleges that he complied with the officer's instructions to stop his vehicle, turn off the

[1] The Amended Complaint's factual allegations are taken as true for purposes of this Motion only. Should any claim survive dismissal (and none should), Defendants reserve all rights to dispute the Amended Complaint's allegations. Moreover, although Plaintiff includes hyperlinks to video recordings throughout the Amended Complaint, those hyperlinks alone do not make the referenced materials part of the Court's record. Pursuant to Section 3G(4) of this Court's CM/ECF Administrative Procedures, "a hyperlink contained in a filing is no more than a convenient mechanism for accessing material cited in a document. A hyperlink reference is extraneous to any filed document and is not part of the Court's record." Accordingly, the hyperlinked videos, which were not conventionally filed as exhibits, are not technically part of the pleadings before the Court on this Motion. Nevertheless, the videos are incorporated by reference, and the Defendant Officers therefore rely upon them in this Motion.

engine, and exit the vehicle. *Id.* ¶¶ 114–16. Plaintiff further alleges that Officer Paige did not explain the basis for the stop and subsequently attempted to handcuff him. *Id.* ¶ 117.

According to Plaintiff, Officer Paige forcibly took him to the ground, and Officer Carballo-Perez subsequently deployed his Taser twice while Plaintiff was attempting to comply with commands. *Id.* ¶¶ 129, 135–39, Plaintiff further asserts that other officers present at the scene failed to intervene. *Id.* ¶¶ 287–99.

Following the encounter, Plaintiff was arrested and charged with various offenses, including driving under the influence, battery on a law enforcement officer, and resisting an officer. *Id.* ¶¶ 149–51. Plaintiff alleges that Officers Lorenzo, Crews, Fernandez, and Paige knowingly created or participated in the preparation of false police reports, arrest affidavits, DUI documentation, and other official records to support criminal charges against him. *Id.* ¶¶ 154–89, 190–250. Plaintiff further alleges that the criminal prosecutions were ultimately dismissed and that the purportedly fabricated DUI documentation caused the administrative suspension of his driver's license. *Id.* ¶¶ 153, 202, 216, 227–29.

In addition to the allegations concerning his arrest, Plaintiff identifies prior incidents involving MBPD officers, which he contends establish a longstanding municipal custom of tolerating excessive force, unlawful arrests, and fabricated criminal accusations. *Id.* ¶¶ 60–129. Specifically, Plaintiff references incidents involving Cody Wade, Dalonta Crudup, Mariyah Maple, Lowell Poitier, and William Sarubbi—incidents that occurred over the span of several years and under very different circumstances. Plaintiff also references incidents dating back to approximately 1989, thirty seven years ago, and merely alleges that, during the five years preceding his arrest, the City received repeated warnings concerning generalized "misconduct" involving numerous MBPD officers. *Id.* ¶¶ 67–96.

Plaintiff asserts that these incidents placed the City on notice of purported widespread misconduct and that the City nevertheless failed to meaningfully investigate, supervise, discipline, or otherwise correct the alleged (generalized) practices. *Id.* ¶¶ 329–356: Based on these allegations, Plaintiff seeks to impose municipal liability upon the City for alleged excessive force and deprivation of liberty, in addition to asserting state-law claims for battery and false imprisonment/false arrest. *Id.* ¶¶ 275–86, 319–28.

## III. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 556. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 663. "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Fin. Sec. Assurance, Inc. v. Stephens, Inc*., 500 F.3d 1276, 1282 (11th Cir. 2007) (per curiam) (*Twombly*, 550 U.S. at 555); *Leeds v. Meltz*, 85 F.3d 51, 53 (2nd Cir. 1996)("[B]ald assertions and conclusions of law will not suffice."); *see also Jackson v. BellSouth Telecomm*., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal). A complaint must contain enough facts to plausibly allege the required elements. *Watts v. Fla. Int'l Univ*., 495 F.3d 1289, 1295–96 (11th Cir. 2007).

Thus, pursuant to *Iqbal*/*Twombly*, the burden is on Plaintiff to demonstrate the plausibility of his claims on the face of the Complaint by identifying facts that support the existence of the City's alleged wrongdoing. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679–80. Plaintiff fails to meet his burden, therefore warranting a dismissal of the Complaint.

## IV. ARGUMENT

## CITY'S MOTION

### A. Counts VI, VII, And X Barred by Section 768.28(9)(a), Florida Statutes, Because Plaintiff's Factual Allegations Affirmatively Describe Conduct Committed in Bad Faith and With Malicious Purpose as a Matter of Law

Plaintiff asserts three state-law claims against the City: battery arising from Officer Carballo-Perez's alleged use of a taser (Count VI), battery arising from Officer Paige's alleged takedown (Count VII), and false imprisonment/false arrest arising from the Defendant Officers' alleged unlawful detention and arrest (Count X).

Each claim is expressly pleaded against the City in the alternative to the individual Defendant Officer. However, the facts incorporated into these claims affirmatively describe

deliberate misconduct committed in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. Section 768.28(9)(a) provides, in pertinent part:

> The **exclusive remedy** for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee**, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property**. The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.29(9)(a) (emphasis added).

Section 768.28(9) waives the government's sovereign immunity for "both negligent and 'intentional' torts alike." *Blue v. Miami–Dade County,* No. 10–23599–CIV, 2011 WL 2447699, at *1 (S.D. Fla. June 15, 2011). "However, the government cannot be held liable for those intentional torts committed with malicious purpose, bad faith, or with wanton and willful disregard of human rights, safety, and property." *Id.* Specifically, courts have found municipalities are entitled to sovereign immunity at the motion to dismiss stage when the complaint contains express allegations characterizing the employee's actions as made in bad faith, malicious, or wanton and willful." *Nicholson v. City of Miami,* No. 1:22-CV-21268-JLK, 2022 WL 17073684, at *4 (S.D. Fla. Nov. 17, 2022); *see, e.g.*, *Fletcher v. City of Miami,* 567 F. Supp. 2d 1389, 1394 (S.D. Fla. 2008) (Altonaga, J.) ("Florida courts have routinely held that a governmental entity may not be held liable where its employee's actions were malicious, in bad faith, or showed reckless and wanton disregard ....").

"The question of whether an act was committed with malicious purpose, bad faith, or with wanton and willful disregard is not a question that must be submitted to a jury, but rather, can be decided by the Court depending on the facts." *Blue,* No. 10-23599-CIV, 2011 WL 2447699, at *2 (citing *Prieto v. Malgor*, 361 F.3d 1313, 1320 (11th Cir. 2004)). Certain factual scenarios "cannot be characterized as anything but acts committed in bad faith or with malicious purpose of in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Id.* For example, a teacher intentionally kicking a child in the mouth because she used the restroom without

permission clearly falls within the ambit of section 768.28(9) and justified dismissal of the claims against the county at the pleading stage. *Id.* at *2–3.

Similarly, in *Grant v. City of W. Palm Beach,* the court dismissed a vicarious liability claim against the City under section 768.28(9)(a) where the officer allegedly stopped the plaintiff based on an uncorroborated tip, arrested him without probable cause, and used excessive force, finding that the conduct, as alleged, indicated bad faith, malicious purpose, or wanton and willful disregard of the plaintiff's rights. No. 25-CV-80035-RLR, 2025 WL 1168914, at *7 (S.D. Fla. Apr. 22, 2025).

Characterization as a matter of law of conduct as in "bad faith," "malicious," or "wanton and willful" is not limited to the excessive-force context. In *Casado v. Miami-Dade County*, 340 F. Supp. 3d 1320 (S.D. Fla. 2018), the court dismissed state-law false arrest and false imprisonment claims against Miami-Dade County under section 768.28(9)(a). The court explained that the plaintiff's allegations of fabricated evidence and other intentional misconduct described conduct falling within the statute's exception to governmental liability. *Id.* at 1330 (citing *Alicea v. Miami-Dade County*, No. 13-21549-Bloom, DE# 95 (S.D. Fla. Oct. 25, 2014) (holding that even though the complaint "skillfully avoids the words 'malicious, bad faith or in reckless and wanton disregard for human rights, safety, or property,'" sovereign immunity still barred the claim against the County because the facts alleged established as a matter of law that the officer acted maliciously, including by making false statements and material omissions regarding the plaintiff's arrest).

Likewise, in *Menard v. Miami-Dade County*, the plaintiff brought state-law false imprisonment claims against both the county and an individual officer, alleging that the plaintiff's arrest was attributable only to racial profiling and that the arresting officer intentionally turned off his body camera during the interaction and lied under oath following the incident. No. 19-21268-Civ-Scola, 2019 WL 4247627, at *1 (S.D. Fla. Sept. 6, 2019). The plaintiff hoped to pursue both claims by pleading in the alternative: in the claim against the officer, the plaintiff alleged that the officer acted in bad faith and maliciously, but he "specifically omit[ted] any mention of 'malicious' or 'wanton or willful' behavior" in the claim against the county. *Id.* at *3. The court recognized that this tactical pleading fell outside "the limits to a plaintiff's ability to advance alternative theories in § 768.28 cases [because] the factual allegations can only suggest malice or bad faith on the part of the individual defendant." *Id.* (quoting *Reyes v. City of Miami Beach*, No. 07-2268-CIV, 2007 WL 4199606, at *2 (S.D. Fla. Nov. 26, 2007)); *see also Terry v. Rodriguez,* No. 09-23726-CIV, 2010 WL 2342382, at *2 (S.D. Fla. June 7, 2010) (dismissing claim against municipality

where allegations that officer intentionally fabricated statements in an arrest affidavit and acted with malicious purpose precluded municipal liability under § 768.28(9)(a), notwithstanding alternative pleading).

The same principle applies here. From the very first paragraph of the Amended Complaint, Plaintiff alleges that the Defendant Officers unlawfully seized him, violently took him to the ground, twice tased him despite his attempts to comply, and then deliberately fabricated criminal accusations to conceal and justify their misconduct. Am. Compl. at 1. Plaintiff further alleges that the officers knowingly incorporated false accusations into sworn police documents, causing him to face criminal prosecution and the suspension of his driver's license. *Id.* These allegations are not confined to the introductory paragraph. Rather, Plaintiff repeatedly describes conduct undertaken knowingly, deliberately, and for the express purpose of concealing unlawful conduct.

As to **Count VI**, Plaintiff alleges that Officer Carballo-Perez intentionally deployed his Taser twice against Plaintiff while Plaintiff was on the ground, had his hands raised, posed no immediate threat, and was attempting to comply with officers' commands. *Id.* at 1; ¶¶ 136–40; 253–57, 275–80.

As to **Count VII**, Plaintiff alleges that Officer Paige intentionally employed a substantial and gratuitous two-legged takedown against a compliant individual without warning, explanation, or an attempt to use lesser force. *Id.* ¶¶ 123–28, 262–73, 281–86. The alleged misconduct was not merely an excessive application of force during an otherwise lawful arrest. Plaintiff expressly alleges that the officers used force without justification against an individual who posed no threat and that the subsequent criminal accusations were fabricated to conceal and justify the officers' conduct. *Id.* ¶¶ 121, 128, 133, 137-39, 145–46.

As to **Count X**, Plaintiff alleges that the Defendant Officers intentionally detained and arrested him without probable cause and subsequently created or relied upon fabricated criminal accusations to justify the seizure. *Id.* ¶¶ 319–28. Indeed, Plaintiff alleges that Defendant Officer Fernandez falsely alleged that Plaintiff showed signs of impairment (*Id.* ¶¶155–62), that Defendant Officer Lorenzo knowingly prepared false arrest documentation (*Id.* ¶¶ 163–77); that Defendant Officer Crews knowingly fabricated DUI test results and sworn statements (*Id.* ¶¶ 178–89); and other Defendant Officers participated in initiating or continuing criminal proceedings based upon information they allegedly knew was false. *Id.* ¶¶ 190–250.

Accepting these allegations as true, Plaintiff does not describe an ordinary disagreement concerning the reasonableness of an arrest or the amount of force necessary under the circumstances. Instead, Plaintiff affirmatively alleges a coordinated course of deliberate misconduct undertaken to unlawfully seize him, subject him to unjustified force, and manufacture evidence to conceal the officers' wrongdoing. Although the Court need not accept Plaintiff's conclusory characterization of the officers' conduct as "malicious," the factual allegations of deliberate falsification, intentional use of gratuitous force against an allegedly compliant individual, and knowing creation of false criminal accusations independently support application of Florida Statutes section 768.28(9)(a).

Although Plaintiff may plead alternative theories of liability (Am. Compl. ¶¶ 279, 285, 326), there are limits to the ability to plead in the alternative. *See Menard*, 2019 WL 4247627, at *3; *Rodriguez*, 2010 WL 2342382, at *2 (S.D. Fla. June 7, 2010) (holding that courts have also recognized the limits to a plaintiff's ability to advance "alternative" theories in § 768.28 cases where the factual allegations can only suggest malice or bad faith on the part of the individual defendant."); *see also Thomson v. Davenport*, No. 09-21708-CIV-GOLD/MCALILEY, 2010 WL 11601554, at *5 n.9 (S.D. Fla. June 16, 2010) ("While Plaintiff may plead claims in the alternative, she cannot salvage her battery claim by requesting that certain facts alleged in her Amended Complaint be ignored for purposes of certain claims."). The substantive allegations supporting those theories must still establish a legally cognizable claim against each Defendant. A plaintiff cannot tactically ignore facts or omit certain language in hopes of pursuing inconsistent theories.

In Counts VI, VII, and X, Plaintiff first alleges that the Defendant Officers acted intentionally, in bad faith, with malicious purpose, or with wanton and willful disregard of human rights, safety, or property. Am. Compl. ¶¶ 279, 285, 326. Plaintiff then immediately alleges, in the alternative, that the officers did not engage in such conduct. Here, Plaintiff incorporates the same factual allegations of deliberate and malicious misconduct into the state-law claims asserted against the City. The Amended Complaint identifies no distinct, non-malicious conduct supporting municipal liability independent of the allegedly deliberate misconduct attributed to the Defendant Officers.

Plaintiff cannot simultaneously predicate his claims upon allegations that officers knowingly fabricated criminal accusations to conceal intentional wrongdoing and avoid the statutory consequences of those allegations simply by stating that, alternatively, the conduct was

not malicious. *See also Nicholson v. City of Miami*, No. 1:22-CV-21268-JLK, 2022 WL 17073684, at *4 (S.D. Fla. Nov. 17, 2022) ("The Court also finds that although Plaintiff does not explicitly characterize [the officer's] conduct as malicious, committed in bad faith, or wanton and willful, Plaintiff has alleged facts about [the officer's] conduct that cannot be characterized as anything other than committed in bad faith. Plaintiff's Complaint alleges that [the officer] pushed and pulled Plaintiff (who was 65 years of age or older at the time) down the hallway by his collar, grabbed and held him against the wall, and slammed him to the floor. . . . [R]egardless of how Plaintiff couches [the officer's] actions in certain parts of his Complaint, the Court determines that [the officer's] actions, as alleged and taken as true, are malicious or committed in bad faith or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.").

Accordingly, accepting Plaintiff's factual allegations as true, the conduct underlying Counts VI, VII, and X falls outside the City's limited waiver of sovereign immunity under section 768.28(9)(a). These Counts should therefore be dismissed as against the City.

**B. <u>Counts XI And XII Fail to State a Claim for Municipal Liability Under Section 1983/ *Monell*</u>**

**i. <u>Overview of Municipal Liability</u>**

Counts XI and XII should also be dismissed because both fail to adequately allege any City's liability under *Monell*. Following *Iqbal/Twombly*, Plaintiff has the burden to show the plausibility of his claims on the face of the Complaint by identifying actual facts that support the existence of the City's alleged wrongdoing (as distinct from that of the Officers). Plaintiff fails to meet his burden.

To state a claim under 42 U.S.C. § 1983,[2] "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Monell*, 436 U.S. at 694.

It is well-settled that a municipality, like the City, may ***not*** be held vicariously liable for the acts of its employees based on *respondeat superior* under Section 1983. Rather, Plaintiff must allege facts demonstrating he suffered a deprivation of his rights pursuant to a policy or custom

---

[2] 42 U.S.C. § 1983 provides a remedy for "the deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws" by a "person . . . [acting] under color of any statute, ordinance, regulation, custom, or usage[] of any State or Territory or the District of Columbia[.]"

authorized by a City final policymaker, which was the moving force behind the deprivation. *See Monell*, 436 U.S. at 694 (concluding that Section 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor"). Following *Monell*, a plaintiff must allege facts proving three elements to establish Section 1983 municipal liability: "(1) that his constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Here, Plaintiff asserts two distinct municipal liability claims. Count XI alleges that the City maintained a longstanding custom of tolerating excessive force against compliant or nonthreatening individuals. Count XII alleges that the City maintained a longstanding custom of permitting officers to fabricate criminal accusations and official reports to justify unlawful seizures.

Both Counts fail to state a plausible claim under *Monell*.

**ii. <u>Plaintiff Has Not Alleged Facts Establishing a Municipal Custom or Policy</u>**

Assuming without admitting that Plaintiff has sufficiently alleged that his constitutional rights were violated by the Officers, neither Count XI nor Count XII identifies any officially promulgated City policy authorizing excessive force, fabrication of evidence, unlawful seizures, or malicious prosecution.

To allege a custom or policy, a plaintiff must "identify either (1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker for the [municipality]." *Grech v. Clayton Cnty.*, Ga., 335 F.3d 1326, 1329 (11th Cir. 2003); *see also id*. ("The Supreme Court has placed strict limitations on municipal liability under § 1983.")."[T]he simple mention of 'policy and/or custom' is not enough, for a plaintiff must do something more than simply allege that such an official policy exists." *Perez v. Metro. Dade Cnty.*, No. 06-20341-CIV, 2006 WL 4056997, at *2 (S.D. Fla. Apr. 28, 2006) (Moreno, J.) (internal quotations omitted); *accord Rosario v. Miami-Dade Cnty.*, 490 F. Supp. 2d 1213, 1225 (S.D. Fla. 2007) (Ungaro, J.).

Here, Plaintiff acknowledges that the City maintained written procedures governing administrative review of officers' responses to resistance. Am. Compl. ¶ 334. Plaintiff nevertheless asserts that the City failed to meaningfully enforce those procedures and permitted officers to use

unjustified force without accountability. *Id.* ¶¶ 334–40. These allegations, however, do not identify an official policy directing or authorizing the challenged conduct. Recognizing the absence of an official policy, Plaintiff attempts to establish municipal liability through allegations of a longstanding and widespread unofficial custom. This generalized and unsupported attempt fails.

A good example of deficient *Monell* pleading can be found in the recent U.S. Court of Appeals for the Eleventh Circuit decision in *Plowright v. Miami Dade County*, 102 F.4th 1358 (11th Cir. 2024). In *Plowright*, the plaintiff alleged that police officers taser-shocked his dog and then needlessly shot and killed the dog, despite the dog being incapacitated from the tasing. *Id.* at 1362. In efforts to impute the officers' actions to the local government (the County), the plaintiff alleged in conclusory fashion that the county "had a county wide custom of shooting … dogs." *Id.* at 1370 (quoting complaint). This bare assertion was insufficient as a matter of law: "Without any additional details about the circumstances of past incidents, however—including whether the dogs in question posed an imminent threat—Plowright failed to allege facts plausibly indicating that there was such a custom or, even if there was, that the custom 'constituted deliberate indifference to [his] constitutional right[s].'" *Id.* (quoting *McDowell*, 392 F.3d at 1289).

In *Brooks v. Scheib*, 813 F.2d 1191 (11th Cir. 1987) the Eleventh Circuit required that an unofficial custom or practice be shown through **pleaded facts** demonstrating **<u>prior investigated incidents with findings of wrongdoing, as uninvestigated or unaddressed complaints are insufficient.</u>** Conclusory assertions, devoid of ultimate facts, do not suffice to establish an unofficial custom or practice. *see also, e.g., Sanchez v. Miami-Dade Cnty.*, No. 06-21717-CIV, 2007 WL 1746190, at *3 (S.D. Fla. Mar. 28, 2007) (King, J.) (finding vague assertion that a "policy, custom, and practice" exists insufficient to survive a motion to dismiss). (emphasis added)

Here, Plaintiff conclusorily asserts that, in the five years preceding his arrest, the City was confronted with allegations of misconduct involving at least eighteen MBPD officers, including excessive force, unlawful arrests, and fabricated criminal accusations. Am. Compl. ¶ 67. However, the mere existence of prior complaints or lawsuits does not establish that the alleged misconduct actually occurred or that the City maintained a widespread custom of constitutional violations. *See Scheib*, 813 F.2d at 1193. Indeed, Plaintiff relies on several incidents without identifying any finding that the officers involved committed the alleged constitutional violations. *See* Am. Compl. ¶¶ 69–72, 78–95. Although Plaintiff references settlements, dismissed criminal charges, and pending or previously filed civil actions, none of these circumstances, are a finding of wrongdoing.

Importantly, while Plaintiff identifies criminal proceedings and findings of individual wrongdoing arising from the Dalonta Crudup incident, (*Id.* ¶¶ 73–77), those findings do not, without more, establish a widespread municipal custom or that the City was deliberately indifferent to such misconduct. Additionally, Plaintiff explicitly alleges that the City did punish the officer involved in the incident. Am. Compl. ¶ 76 ("Sergeant Jose Perez pleaded guilty and received probation."). This deficiency is fatal under *Brooks v. Scheib*.

Equally fatal is indeed Plaintiff's reliance on settled claims, given also the absence of any allegation that City admitted liability in those settlements (nor could there be). Am Compl. ¶¶ 69–72, 75, 87. In *Buress v. City of Miami*, the court held as a matter of law that settlement agreements—particularly those that expressly disclaim any admission of liability—cannot be relied upon to establish a custom or practice under *Monell*. No. 20-23078-CIV, 2025 WL 1231951, at *7 (S.D. Fla. Apr. 29, 2025); *see also Buckler v. Israel, 680 F. App'x 831,* 836 (11th Cir. 2017) ("[t]hose suits that were settled or voluntarily dismissed do not, without admissions of liability, put [Broward County] on notice of any pattern of constitutional violations."); *Simmons v. Bradshaw,* 879 F.3d 1157, 1168 (11th Cir. 2018) ("the district court noted correctly that settlement agreements are not competent evidence that Sheriff Bradshaw condoned the actual use of excessive force."); *Gonzalez v. City of Miami*, Case No. 1:22-cv-21587-KMM, 2003 WL 2030635, at *2 (S.D. Fla. Feb. 14, 2023) (Moore, J.) (quoting *Buckler*, 680 F.App'x at 836) ("[s]ettled cases do not put a municipality on 'notice of any pattern of constitutional violations.' ").

Importantly, a few isolated instances would not suffice to meet the high burden of deliberate indifference: "[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be **obvious, flagrant, rampant and of continued duration, rather than isolated occurrences**." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)) (emphasis added); *see also Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015) (Lenard, J.) (concluding that "four isolated shootings" in a nine-month span were not enough to constitute a custom or usage in the absence of a written law or express municipal policy).

Prior incidents must involve facts substantially similar to those at hand in order to be relevant to a deliberate-indifference claim. *Mercado,* 407 F.3d at1162. *see also Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1373–75 (S.D. Fla. 2013) (Lenard, J.) (rejecting *Monell* theory where "many of the alleged incidents bear little to no factual similarity to the instant case"). *Wade v. City of*

*Miami Beach* is particularly instructive. 565 F. Supp. 3d 1248 (S.D. Fla. 2021) (Scola, J.). There the plaintiff attempted to establish an unofficial municipal custom by pointing to a small number of alleged prior incidents involving alleged misconduct by Miami Beach police officers. *Id.* at 1252–53. The court rejected the theory at the pleading stage, concluding that three prior incidents were merely “largely outdated, isolated incidents” with no substantial similarity to the case at bar and therefore did not permit a reasonable inference of a practice “so permanent and well settled as to constitute a custom or usage with the force of law.” *Id.* at 1252 (quoting *Brown*, 923 F.2d at 1481).

Here, Plaintiff relies upon several factually distinct incidents spanning over almost two decades. Some concern allegations of excessive force during arrests; others involve alleged unlawful detentions, interference with individuals recording police activity, purportedly false criminal accusations, or failures to document use-of-force incidents. Although Plaintiff characterizes these incidents as manifestations of the same municipal custom, the Amended Complaint does not sufficiently establish that they arose from a common municipal practice, that the same deficiencies caused the alleged misconduct, or that a final municipal policymaker knowingly permitted a continuing pattern of substantially similar constitutional violations.

As to the **Cody Wade** incident**,** Plaintiff alleges that Officers Alfredo Garcia and Agustin Rodriguez used excessive force against Cody Wade during a June 2019 encounter and that the City subsequently settled Wade's civil lawsuit. Am. Compl. ¶¶ 69–72. This does not constitute a finding a wrongdoing. *See Buress*, 2025 WL 1231951, at *7.

Plaintiff next references the July 2021 incident involving **Dalonta Crudup** and two individuals who recorded police conduct, Khalid Vaughn and Sharif Cobb. *Id.* ¶¶ 73–77. Unlike allegations based solely on civil settlements, Plaintiff alleges criminal proceedings arising from this incident, including a guilty plea and a jury conviction for battery. *Id.* Nevertheless, criminal liability imposed upon individual officers on a single occasion, does not, without more, establish that the City itself maintained an unconstitutional policy or custom. Nor does the fact that certain officers were criminally charged establish that the City failed to take corrective action. *Cf. Id.* ¶ 76. The Amended Complaint must plausibly **connect** the alleged institutional failure to the subsequent constitutional deprivation, rather than rely exclusively upon the alleged seriousness of the earlier misconduct.

Plaintiff also relies upon allegations involving **Mariyah Maple**, who allegedly was subjected to excessive force while recording police activity and subsequently arrested based upon fabricated criminal accusations. *Id.* ¶¶ 78–84.[3] Plaintiff emphasizes that Defendant Captain Feldman allegedly participated in or witnessed the earlier incident. *Id.* ¶ 82–84. However, the allegations concerning Maple arise from a separate encounter involving different circumstances and a distinct alleged use of force. Plaintiff moreover, fails to identify a judicial finding establishing that Captain Feldman engaged in unconstitutional misconduct in that prior incident or that the City adopted or ratified such misconduct. The fact that a prior lawsuit named a supervisory officer who is also a Defendant here does not itself establish a municipal custom, deliberate indifference, or causation. Notably, the case was settled and therefore does not constitute a finding of wrongdoing under *Buress*. *See* Exhibit 1.

Plaintiff next alleges that an MBPD Officer struck **Lowell Poitier** and subsequently prepared an arrest affidavit containing false statements. *Id.* ¶¶ 85–87. Plaintiff further asserts, upon information and belief, that the City settled Poitier's civil claims.[4] The claim was in fact not settled,

---

[3] A copy of the Notice of Settlement in *Maple* is attached here to as **Exhibit 1.**"There are two exceptions to the conversion provision in Rule 12(d)." *Overstreet v. Worth Cnty. Georgia*, No. 21-14391, 2022 WL 4007460, at *3 (11th Cir. Sept. 2, 2022) The first is the "incorporation by reference" doctrine, which allows for documents attached to a motion to dismiss to be considered by the court if they are: (1) central to the plaintiff's claim and (2) undisputed (authenticity of the document is not challenged). *Id. (*citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2007)). The second exception occurs where the court takes judicial notice of documents, such as matters of public record and prior court records. *Id.* In *Overstreet*, the Eleventh Circuit held that the district court properly considered prior filings by the appellants in related state-court proceedings. In particular "another court's order [can be considered]... for the purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation and **related filings**." *In re Delta Res., Inc.*, 54 F.3d 722, 725 (11th Cir. 1995) (quoting *United States v. Jones,* 29 F.3d 1549, 1553–54 (11th Cir. 1994)) (**emphasis added**); Fed. R. Evid. 201(b). Similarly, Plaintiff expressly references the federal civil rights action that Maple filed against the City and relies on specific allegations from that case. *See* Am. Compl. ¶ 84. Accordingly, the Court may take judicial notice of the attached Notice of Settlement as a related filing in that litigation.

[4] As a threshold matter, "[f]actually unsupported allegations based 'on information and belief' are not entitled to the assumption of truth." *Hoti v. Garten*, No. 18-CV-80657-Rosenberg/Reinhart, 2021 WL 3482979, at *5 (S.D. Fla. July 21, 2021) (citing *Scott v. Experian Info. Sols.*, No. 18-CV-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) (Altonaga, J.) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard. A copy of the Notice of Voluntary Dismissal is attached hereto as **Exhibit 2**. The Court

but Plaintiff voluntarily dismissed it. *See* Exhibit 2. Even assuming, *arguendo,* that the claims were settled, ss stated above, settled claims cannot be relied upon to establish municipal liability. The Amended Complaint likewise fails to identify facts demonstrating how the Poitier incident resulted from the same municipal practice allegedly responsible for Cox's arrest.

Finally, Plaintiff relies upon the December 2020 encounter involving **William Sarubbi** and Officers Leon Paige, Adriel Dominguez, and Adrian Dominguez. *Id.* ¶¶ 88–95. Plaintiff alleges that Officer Paige participated in an unlawful seizure and arrest, and that officers falsely accused Sarubbi of battery on a law enforcement officer and resisting arrest with violence. *Id.* ¶ 90. Plaintiff further alleges that Sarubbi filed a civil lawsuit in December 2022 and that, on March 27, 2023, the City Attorney issued a litigation status report identifying that lawsuit to the Mayor and City Commission. *Id.* ¶¶ 92–94. However, the City's receipt of notice that litigation had been filed does not establish that the underlying allegations were true, that Officer Paige had committed a constitutional violation, or that the City maintained a custom of tolerating such conduct. The Amended Complaint does not identify an adjudication of wrongdoing arising from the Sarubbi lawsuit before Cox's arrest. [5] The case was in fact settled. *See* Exhibit 3. The Amended Complaint also fails to allege facts showing that the Mayor or City Commission directed, authorized, or ratified the alleged conduct. This omission is once again fatal. Thus, Plaintiff does not allege a pattern of substantially similar conduct sufficient to establish a widespread municipal custom or to place a City policymaker on notice of such a custom. Plaintiff also fails to plead facts demonstrating that these incidents constituted findings of wrongdoing by the City sufficient to establish a course of substantially similar conduct known to a City policymaker. They therefore do not plausibly establish municipal notice of a widespread unconstitutional practice. Accordingly, Plaintiff cannot aggregate disparate allegations, lawsuits, and settlements and label the resulting hodgepodge a municipal "custom" with a high degree of abstraction and generality. Therefore,

---

may take judicial notice of this filing because it is part of the same litigation expressly referenced by Plaintiff in the Amended Complaint. *See* Am. Compl. ¶ 87; *Overstreet*, 2022 WL 4007460, at *3; Fed .R. Evid. 201(b).

[5] A copy of the Notice of Voluntary Dismissal upon of Settlement in *Sarubbi* is attached here to as **Exhibit 3.** The Court may take judicial notice of this filing because it is part of the same litigation expressly referenced by Plaintiff in the Amended Complaint. *See* Am. Compl. ¶ 92 et seq.; *Overstreet*, 2022 WL 4007460, at *3; Fed .R. Evid. 201(b).

Plaintiff fails to allege the kind of "obvious, flagrant, [and] rampant" pattern of similar misconduct required to establish a municipal custom. *Cf. Parnell*, 193 F.3d at 1269.

**iii. <u>Plaintiff Failed to Adequately Allege a Failure to Train and /or to Show Deliberate Indifference</u>**

A "[m]unicipal policy or custom may include a failure to provide adequate training if the deficiency 'evidences a deliberate indifference to the rights of its inhabitants.'" *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1293 (11th Cir. 2009) (quoting *Canton*, 489 U.S. at 385). "As our decision in *Canton* makes clear, 'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). To meet the "deliberate indifference" standard, a plaintiff must allege that "the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998); *see also Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986) ("To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality. Normally random acts or isolated incidents are insufficient to establish a custom or policy."); *see also Wade*, 565 F. Supp. 3d at 1253 (holding that to survive dismissal, the plaintiff was required to allege facts permitting an inference that the City knew of a need to train or supervise and deliberately chose not to act, ordinarily though actual knowledge or multiple similar incidents demonstrating both knowledge and deliberate indifference).

Here, Plaintiff repeatedly alleges that the City failed to meaningfully investigate prior incidents, failed to adequately discipline officers, and failed to correct purported deficiencies in supervisory review. Am. Compl. ¶¶ 334–40, 348–52.

However, these allegations remain substantially conclusory. Although Plaintiff acknowledges the existence of written procedures governing response-to-resistance investigations, he does not identify specific provisions that the City systematically refused to enforce, particular disciplinary decisions establishing deliberate indifference, or facts demonstrating that a final policymaker knowingly permitted a widespread pattern of similar constitutional violations. Nor does Plaintiff explain how the City's alleged investigative or disciplinary deficiencies caused the specific conduct attributed to the Defendant Officers during the April 16, 2023 encounter.

Accordingly, Plaintiff failed to adequately allege a municipal policy, custom or widespread pattern or the City's deliberate indifference, as required under *Monell.*

**iv. <u>Plaintiff Fails to Identify a Final Policymaker</u>**

Even if there were an adequate showing of any pattern, custom or practice (and there is none), the alleged custom must be a "widespread practice that . . . is so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (cleaned up). To establish that a widespread practice is functionally sanctioned by the municipality, the plaintiff must demonstrate that the custom or practice was effectuated "through the repeated acts of a final policymaker for the [municipality]." *Grech*, 335 F.3d at 1329. The plaintiff "must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused that particular constitutional violation in issue." *Id.* at 1330; *see Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir. 1996) ("Only those officials who have final policymaking authority may render the municipality liable under § 1983.").

Plaintiff here fails to identify any final policymaker, let alone a policymaker who undertook any acts, much less "repeated acts," to establish any purported unofficial custom. Gravely, Plaintiff does not allege that any specific final policymaker for the City knew of any of the alleged (and again, non-particularized) "customs" and deliberately failed to act. *Grech*, 335 F.3d at 1329; *see also Wade*, 565 F. Supp. 3d at 1252 ("Moreover, the plaintiff must allege that the final policymaker for the county knows about the custom but failed to stop it." (cleaned up)).

This case is therefore like *Marantes v. Miami-Dade County*, in which the Eleventh Circuit affirmed the dismissal of a *Monell* claim where the plaintiff's sole contention was that the local government's "internal affairs process is ineffective, which in turn sends an implicit message to police officers that they can abuse civilians without punishment." 649 F. App'x 665, 673 (11th Cir. 2016). The plaintiff in *Marantes* did not allege sufficient facts to render that contention plausible, *see id*., and neither does Plaintiff here.

**v. <u>Plaintiff Fails to Allege Facts Tending to Show Causation</u>**

Finally, Plaintiff fails to adequately plead the required causal connection between the alleged municipal customs and his injuries. *McDowell*, 392 F.3d at 1289. *See Rodriguez v. Quinones*, 508 F. Supp. 3d 1198 (S.D. Fla. 2020) ("The plaintiff bears the burden of establishing the causal link between a government policy or custom and the injury which is alleged."); *see also*

*Williams v. City of Miami*, No. 21-23287-Civ-Scola, 2021 WL 4990005, at *4 (S.D. Fla. Oct. 27, 2021) ("Williams does not allege, other than in broad conclusory terms, how the City's failure to supervise and discipline officers in general contributed to Officers Hernandez, Allen, and Gonzalez beating him on September 22, 2019."). Plaintiff must show the policy was the "moving force." *Monell*, 436 U.S. at 694.

Count XI asserts that the City's longstanding customs and deliberate indifference were the moving force behind the alleged excessive force. Am. Compl. ¶ 341. Count XII similarly attempts to attribute the alleged fabrication of criminal accusations and resulting deprivation of liberty to the City's purported tolerance of false reports and deficient disciplinary practices. *Id.* ¶¶ 342–56.

However, these allegations largely restate the ultimate element of municipal liability without identifying the factual mechanism by which an established municipal policy or custom caused the Defendant Officers to act as alleged.

Because the Amended Complaint fails to plausibly establish the existence of an actionable municipal policy or custom, deliberate indifference, and the requisite causal connection, Counts XI and XII fail to state claims for municipal liability and should be dismissed.

**DEFENDANT OFFICERS' MOTION**

**A. <u>The Individual-Capacity Claims Against the Defendant Officers Fail in Substantial Part</u>**

The Defendant Officers separately move to dismiss Counts I through X to the extent set forth below. Two points frame the analysis.

**i. <u>Qualified Immunity and the Body-Worn Camera Footage</u>**

Each Defendant Officer was acting within his discretionary authority, so Plaintiff bears the burden of pleading facts showing that each officer violated a constitutional right clearly established on April 16, 2023, *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002), and qualified immunity is properly resolved on a motion to dismiss where he has not. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

Plaintiff incorporated the body-worn camera footage of Officers Paige, Carballo-Perez, and Lorenzo as Exhibits 2, 3, and 4 and relies on it throughout. Am. Compl. ¶¶ 115, 121, 130, 143. The Court may therefore consider the footage without converting this motion, *Baker v. City of Madison*, 67 F.4th 1268, 1276–77 (11th Cir. 2023); *Swinford v. Santos*, 121 F.4th 179, 186–88 (11th Cir. 2024), and "where a video is clear and obviously contradicts the plaintiff's alleged facts, [the

Court] accept[s] the video's depiction instead of the complaint's account . . . ." *Baker*, 67 F.4th at 1277–78.

**ii. Count III Fails Because Plaintiff Was Never Seized Pursuant to Legal Process, and the Fourteenth Amendment Theory Is Foreclosed (Lorenzo, Crews, Fernandez)**

Count III alleges that fabricated DUI paperwork and an arrest affidavit caused Plaintiff to be "seized pursuant to constitutionally infirm legal process." Am. Compl. ¶¶ 239, 244. Such a claim has an indispensable threshold element: the plaintiff must have suffered a "seizure pursuant to legal process." *Williams v. Aguirre*, 965 F.3d 1147, 1157–59 (11th Cir. 2020); *see Thompson v. Clark*, 596 U.S. 36, 42 (2022). Seizures pursuant to legal process include "warrant-based seizures" and "seizures following an arraignment, indictment, or probable-cause hearing." *Williams*, 965 F.3d at 1158. A warrantless arrest is a seizure *without* legal process, and a plaintiff who is arrested without a warrant and is not detained after judicial proceedings begin has not suffered a seizure pursuant to legal process at all. *Kingsland v. City of Miami*, 382 F.3d 1220, 1235–36 (11th Cir. 2004), *abrogated on other grounds by Nieves v. Bartlett*, 587 U.S. 391 (2019); *McAffee v. City of Clearwater*, No. 22-12320, 2023 WL 2823392, 2023 U.S. App. LEXIS 8320, at *5–8 (11th Cir. Apr. 7, 2023). Release on bond subject to ordinary pretrial conditions—in *Kingsland*, a $1,000 bond, a required arraignment appearance, and two interstate trips to attend court—does not change the analysis, because "normal conditions of pretrial release" are not a continuing seizure absent "some significant, ongoing deprivation of liberty." *Kingsland*, 382 F.3d at 1236; *see Lyon v. Sheriff of Lake Cnty.*, No. 22-11839, 2023 WL 166889, 2023 U.S. App. LEXIS 747, at *4 (11th Cir. Jan. 12, 2023) ("In *Kingsland*, we held that a plaintiff was not seized when she was released on bond subject to a pretrial release program.").

Plaintiff pleads himself out of this element. He was arrested without a warrant, ¶¶ 112–50; a surety posted bond "before Mr. Cox's first appearance," ¶ 233; and he was never thereafter detained. His ten paragraphs arguing that standard surety-bond conditions – notifying the surety before travel or a change of address – constitute a continuing seizure, ¶¶ 234–44, run counter to *Kingsland*, which binds this Court. The Fourth Amendment portion of Count III must be dismissed as to Officers Lorenzo, Crews, and Fernandez.

The Fourteenth Amendment portion fares no better. Where a specific constitutional provision governs a claim, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing" it. *Graham v. Connor*, 490 U.S. 386, 395 (1989);

*Albright v. Oliver*, 510 U.S. 266, 271, 273–75 (1994) (plurality) (rejecting substantive-due-process claim for prosecution without probable cause). The Eleventh Circuit treats a fabrication-based challenge to a prosecution as a Fourth Amendment malicious-prosecution claim, *see Williams*, 965 F.3d at 1157–58; *Kingsland*, 382 F.3d at 1233–36 (analyzing claim that officers fabricated evidence as a Fourth Amendment malicious-prosecution claim), and Plaintiff identifies no deprivation beyond the alleged seizure: he was never tried, convicted, or incarcerated after legal process. The administrative suspension of his driver's license cannot fill the gap. A license is a state-created property interest, which substantive due process does not protect, and Florida's formal-review and certiorari procedures, Fla. Stat. § 322.2615(6), (13), of which Plaintiff's own citation gave him notice, Ex. 5 at 7, foreclose any procedural due process claim. *McKinney v. Pate*, 20 F.3d 1550, 1556, 1560–63 (11th Cir. 1994) (en banc). Accordingly, Count III should be dismissed in its entirety.

**iii. <u>Counts I and II Fail in Part: Pretrial Intervention Is Not a Bona Fide Termination, and Officers Paige and Crews Are Not Alleged to Have Caused the Prosecutions</u>**

A Florida malicious-prosecution claim requires, among other elements, that the defendant was "the legal cause of the original proceeding" and that the proceeding reached "a bona fide termination" in the plaintiff's favor. *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994). A bona fide termination is one that "indicates the innocence of the accused" and "has not been obtained by the accused on a bargained-for promise of payment or restitution." *Id.* at 1356.

**Count II (felony prosecution).** Plaintiff admits that he "entered a pretrial intervention program in connection with the felony charges." Am. Compl. ¶ 152. Florida's Fourth District has held that a dismissal that follows entry into pretrial intervention is not such a termination. The program is a bargained-for diversion for persons who, "by definition, are subject to being found guilty of the crime charged," the resulting dismissal is without prejudice, and the participant's protestations of innocence do not bring the dismissal within *Alamo*'s exception. *Swartsel v. Publix Super Markets, Inc.*, 882 So. 2d 449, 451–52 (Fla. 4th DCA 2004), *abrogated on other grounds by State Farm Mut. Auto. Ins. Co. v. Nichols*, 932 So. 2d 1067 (Fla. 2006); *see* Fla. Stat. § 948.08(4), (5)(c). The Eleventh Circuit has applied *Swartsel* to affirm dismissal under Rule 12(b)(6), rejecting the argument that a plaintiff who "may not have been required to complete the terms of pretrial intervention before the charge was dismissed" has pleaded a bona fide termination, because the

dismissal was still contingent on a negotiated agreement. *Hoffman v. Office of the State Att'y, Fourth Jud. Cir.*, No. 18-11831, slip op. at 23–24 (11th Cir. Dec. 2, 2019). Plaintiff's allegation that the State Attorney later elected not to insist on completion of "the remaining conditions" of his agreement, Am. Compl. ¶ 153, is the same argument *Hoffman* rejected, because the disposition flowed from the pretrial-intervention agreement Plaintiff chose to enter. Accordingly, Count II should be dismissed as to Officers Lorenzo, Crews, Fernandez, and Paige.

**Officer Paige (Counts I and II).** The only fact pleaded against Officer Paige in either count is that he "falsely signed a DUI citation." Am. Compl. ¶¶ 192, 207. The citation, which Plaintiff attached to his Complaint, lists Paige as a second officer but contains no statement attributed to him; it is a form. Am. Compl. Ex. 5 at 7. Every fact Plaintiff pleads about the breath-test request he says was never made concerns Officers Crews and Lorenzo at the station, Am. Compl. ¶¶ 171–74, 183–86, and Plaintiff does not allege that Paige was present for any of it or knew anything about it. Beyond that, Paige is swept into the counts only through group pleading: "Defendants Lorenzo, Fernandez, Paige, and Crews were actively involved in initiating, instigating, and withholding exculpatory information." *Id.* ¶¶ 193, 200, 214. Paige is not alleged to have authored the arrest affidavit, prepared any DUI document, signed any jurat, or testified, which is likely why Plaintiff omitted him from Count III. Moreover, the arrest affidavit itself, which the Amended Complaint quotes at length, ¶¶ 163–77, and which the Court may therefore consider, *Baker*, 67 F.4th at 1276–77, is sworn by Officer Lorenzo alone. A complaint that asserts a claim against multiple defendants "without specifying which of the defendants are responsible for which acts" is an impermissible shotgun pleading, *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015), and an officer who made an arrest is not the "legal cause" of a prosecution that others are alleged to have procured through documents he did not create and facts he is not alleged to have known. Counts I and II should be dismissed as to Officer Paige.

Officer Crews (Count II). Every allegation against Officer Crews concerns DUI test documentation: the DUI Test Report, the implied-consent form, the breath-test and refusal affidavits, and the *Miranda* form. Am. Compl. ¶¶ 178–89. The felony prosecution for battery on a law enforcement officer and resisting, by contrast, rested on Officer Lorenzo's arrest affidavit. *Id.* ¶¶ 163–68, 209. Plaintiff pleads no factual allegation connecting Crews's DUI paperwork to the initiation or continuation of the felony case. Therefore, Count II should be dismissed as to Officer Crews for this additional reason.

**iv. <u>Counts IX and X Fail as to Officer Tucci, and Count X Fails as to the Officers Who Arrived After the Arrest</u>**

**Officer Tucci.** The Amended Complaint alleges exactly one thing Officer Tucci did – he "transported Cox to the hospital and then to TGK for formal processing." Am. Compl. ¶¶ 148, 313. He is not alleged to have been present for the stop, to have witnessed any force, to have participated in the arrest decision, or to have prepared any document. Liability under § 1983 requires an affirmative causal connection between the officer's own conduct and the violation; "[m]erely being present with the arresting officers at the scene is not enough." *Brown v. City of Huntsville*, 608 F.3d 724, 736–37 (11th Cir. 2010). An officer who arrives after an arrest "[is] entitled to rely on the account of the arrest provided by" the arresting officer, *Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013), because the collective knowledge of the investigating officers is imputed to each participating officer, *Terrell v. Smith*, 668 F.3d 1244, 1252 (11th Cir. 2012). No clearly established law holds that a transport officer violates the Fourth Amendment by driving a person whom other officers have already arrested. Count X adds only the conclusion that Tucci "refus[ed] to release Cox once it became clear he committed no crime and was being lied on," ¶ 324, with no fact about what became clear to Tucci, when, or how – a "naked assertion[]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Nor does Plaintiff plead any fact suggesting bad faith or malicious purpose, as section 768.28(9)(a) requires for individual liability. Counts IX and X should be dismissed as to Officer Tucci.

**Officers Fernandez and Crews (Count X).** The tort of false imprisonment, as Florida and the common law define it, is complete at the moment of unlawful restraint. That is, once the detainee is held pursuant to legal process, any further wrong is malicious prosecution, not false arrest. *See Wallace v. Kato*, 549 U.S. 384, 389–90 (2007). By Plaintiff's own account, Sergeant Fernandez "arrived after the officers had used force against Cox" and after Plaintiff had been subdued, Am. Compl. ¶ 155, and Officer Crews did not encounter Plaintiff until after he had been arrested and transported from the scene, *id.* ¶¶ 148, 183–84, 197. Neither officer is alleged to have touched, restrained, or arrested Plaintiff. The conclusory allegation that Fernandez, Crews, and Lorenzo "instigated and directly procured Cox's arrest," *id.* ¶ 323, is contradicted by the chronology Plaintiff pleads, and Count X incorporates only paragraphs 98 through 148, which do not mention Fernandez or Crews at all. *Id.* ¶ 319. An officer who was not present when the seizure

occurred cannot have "seized, detained, and arrested" the plaintiff. *Id.* ¶ 327. Accordingly, Count X should be dismissed as to Officers Fernandez and Crews.

**Officer Lorenzo (Count IX).** Count IX challenges the traffic stop and the roadside arrest. *Id.* ¶¶ 303–11. Officer Lorenzo arrived after Plaintiff had been stopped, ordered out of his truck, and taken to the ground. *Id.* ¶ 143. The only Count IX allegation specific to Officer Lorenzo is that he later "authored the arrest affidavit." *Id.* ¶ 312. That post-arrest act is the subject of Counts I through III. However, it is not an unreasonable stop or a warrantless arrest, and an officer who joins an arrest already in progress may rely on the officers who initiated it. *Wilkerson*, 736 F.3d at 980. Accordingly, Count IX should be dismissed as to Officer Lorenzo.

**Officers Lorenzo and Carballo-Perez (Count X).** The same reasoning disposes of Count X as to the two officers who joined an arrest Officer Paige had already initiated. Plaintiff alleges only that Carballo-Perez "assisted in taking Cox into custody" and that Lorenzo "assisted in the arrest." ¶¶ 321–22. Florida's fellow-officer rule "allows an arresting officer to assume probable cause to arrest a suspect from information supplied by other officers." *Voorhees v. State*, 699 So. 2d 602, 609 (Fla. 1997). Moreover, an officer who joins an arrest in progress is entitled to rely on the officer who initiated it. *Wilkerson*, 736 F.3d at 980. Plaintiff pleads no fact suggesting that either officer knew or had reason to know that Paige lacked a basis for the stop. Indeed, both arrived to find Paige already attempting to handcuff a man who, as Exhibit 3 shows, was flailing and refusing commands. Nor does Plaintiff plead any fact, as opposed to the alternative conclusion in ¶ 326, suggesting that either officer acted in bad faith or with malicious purpose, as section 768.28(9)(a) requires before an individual officer may be held personally liable. On these bases, Count X should be dismissed as to Officers Lorenzo and Carballo-Perez.

#### v. <u>Count VIII Fails as to Captain Feldman, Whom Plaintiff Alleges Slowed the Takedown and Was Pulled Away Before the Taser Was Deployed</u>

An officer may be liable for failing to intervene in another officer's use of excessive force only if he "was in a position to intervene" and had a realistic opportunity to do so. *Priester v. City of Riviera Beach*, 208 F.3d 919, 924–25 (11th Cir. 2000); *Ensley v. Soper*, 142 F.3d 1402, 1407–08 (11th Cir. 1998). However, where the force happens too quickly to be prevented, there is no liability. *Hadley v. Gutierrez*, 526 F.3d 1324, 1330–31 (11th Cir. 2008) (non-intervening officer entitled to qualified immunity where no evidence showed he "could have anticipated and then stopped" a fellow officer's single punch).

Plaintiff's own allegations defeat the claim. The takedown occurred "[w]ithout warning," leaving no opportunity to prevent it. Am. Compl. ¶ 126. Far from standing by, Captain Feldman "held Cox, slowing the takedown," and positioned himself "between Cox and the ground" so that Plaintiff did not land until Feldman "moved out of the way." *Id.* ¶¶ 129–31. That is intervention. As to the first Taser deployment, Plaintiff alleges that Officer Carballo-Perez told Officer Paige to step back and that Paige "reached toward Feldman and pulled him away from Cox" before the Taser was fired. *Id.* ¶ 136. An officer who is being physically pulled off the arrestee by a fellow officer is not "in a position to intervene." As to the second deployment, Plaintiff alleges that Carballo-Perez "directed Captain Feldman to release Cox and discharged his Taser," *id.* ¶ 147, a sequence pleaded as instantaneous, with no allegation of any interval in which Feldman could have acted. The remaining allegation, that Feldman "had the opportunity and ability to stop the force," *id.* ¶ 291, is a bare conclusion, and no clearly established law gave him fair notice that an officer who slows a takedown, cushions the fall, and is pulled away moments before a Taser deployment thereby "fails to intervene." Accordingly, Count VIII should be dismissed as to Captain Feldman.

**vi. <u>Counts IV, VI, and VIII (and Counts V and VII): The Footage Plaintiff Attached Shows Him Actively Resisting, Unrestrained, When He Was Tased</u>**

Plaintiff's theory for the Taser counts is that he "lay flat on the ground," "remained lying on his back, as instructed," and was tased "with his hands raised, not moving, complying." Am. Compl. ¶¶ 131, 137–39. Officer Carballo-Perez's body-worn camera, which Plaintiff attached as Exhibit 3, shows otherwise. From the moment Plaintiff reaches the ground he is flailing his arms and verbally resisting while ignoring repeated commands to stop moving and to place his hands behind his back. Ex. 3. Officer Carballo-Perez draws his Taser, points it at Plaintiff, and deploys it only after Plaintiff continues to resist through multiple commands to stop moving. *Id.* The first deployment does not stop him. Rather, Plaintiff keeps resisting, while an officer warns, "I'm gonna f***ing tase you," and only then does a Taser deploy a second time, at which point Plaintiff is brought under control and handcuffed. Exs. 3, 4. Plaintiff was not handcuffed or otherwise secured at either deployment, and no force of any kind is used after he is handcuffed. *Id.* Where, as here, the video "obviously contradicts" the complaint, the Court views the facts "in the light depicted by the video." *Baker*, 67 F.4th at 1277–78.

On those facts, the two Taser deployments were not excessive, and no clearly established law said otherwise. The *Graham* factors, which look at the severity of the crime, whether the

suspect poses an immediate threat, and "whether he is actively resisting arrest," 490 U.S. at 396, turn on the third factor here. The Eleventh Circuit has held that a single Taser deployment on an uncooperative subject who ignores commands during a traffic stop is "reasonably proportionate to the difficult, tense and uncertain situation," *Draper*, 369 F.3d at 1278; that force applied while a suspect "ha[s] not given up and stopped resisting," including repeated Taser use, does not violate the Fourth Amendment where the force stops once he surrenders his hands, *Mobley*, 783 F.3d at 1355–56; and that officers who tased a subject who "refused to let the officers grab his arms and handcuff them" were entitled to qualified immunity, *Hoyt*, 672 F.3d at 977–80. The cases on which Plaintiff will rely are the opposite of this one: *Fils v. City of Aventura*, 647 F.3d 1272, 1289 (11th Cir. 2011) ("non-hostile and non-violent suspect who ha[d] not disobeyed instructions"); *Oliver v. Fiorino*, 586 F.3d 898, 906–08 (11th Cir. 2009) (man tased eight or more times "into and beyond his complete physical capitulation"; initial shock may have been justified). An officer who deploys a Taser twice against an unrestrained arrestee who is flailing and refusing to give up his hands, and who stops once the arrestee is secured, is entitled to qualified immunity on Count IV. Count VI fails with it, as an officer making an arrest "is justified in the use of any force . . . [w]hich he or she reasonably believes to be necessary," Fla. Stat. § 776.05(1), and a battery claim lies only where the force used was "clearly excessive." *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996).

Count VIII falls with Count IV as to Officers Paige and Lorenzo. A failure-to-intervene claim requires an underlying use of excessive force, *see Mobley*, 783 F.3d at 1357, and the only force either officer could have "intervened" in is the Taser deployment: Officer Lorenzo arrived after the takedown, Am. Compl. ¶ 143, and Officer Paige cannot have failed to intervene in his own. Because the Taser deployments were lawful, Count VIII fails as to both—and for the same reason provides an independent ground for dismissal as to Captain Feldman. Nor does the footage bear out the allegation that Officer Lorenzo "urged further force" by shouting "F*ing tase him." *id.* ¶ 146. What Lorenzo – who had drawn his own Taser, *id.* ¶ 143 – actually says to Plaintiff (to the extent the declarant can be ascertained from the video), is "I'm gonna f*ing tase you." Exs. 3, 4. That is a warning to a resisting arrestee, not encouragement to a fellow officer, and it is further evidence of the reasonableness of the deployment that followed.

**Counts V and VII (Officer Paige).** Officer Paige's camera (Ex. 2) likewise disposes of the takedown counts. Plaintiff falsely alleges that he "complied" with every command.

Specifically, Plaintiff alleges that he turned around and placed his hands on the truck as instructed, ¶¶ 119–22, and that Paige then, "[w]ithout warning," took down a man who "did not kick, punch, or offer violence." ¶¶ 125–26. Exhibit 2 to the Amended Complaint shows otherwise. After Plaintiff exits the truck, Paige orders him to turn around and put his hands on the vehicle. Plaintiff does not turn around. He asks "why," continues to face Paige, and says, "I didn't do anything, you gonna shoot me," and then, "hold up, I didn't do anything wrong, stop it, hold on." He then reaches back toward the open driver's-side door of the truck. Only at that point does Paige take hold of him, and Plaintiff struggles against the handcuffing before Paige takes him to the ground. Ex. 2. An unrestrained suspect who refuses repeated commands, tells the officer to "stop it," and reaches back towards the open door of his vehicle presents exactly the risk officers may neutralize with force. *See Michigan v. Long*, 463 U.S. 1032, 1049 (1983). A takedown used to gain control of such a suspect as he struggles against handcuffing is not excessive, and no clearly established law said otherwise in April 2023. *Mobley*, 783 F.3d at 1355–56; *see Draper*, 369 F.3d at 1278. The *Sanders* presumption likewise defeats the battery claim in Count VII. 672 So. 2d at 47.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion to Dismiss Plaintiff's First Amended Complaint. Specifically, the City respectfully requests that the Court dismiss Counts VI, VII, and X as against the City pursuant to Florida Statutes section 768.28(9)(a), and dismiss Counts XI and XII for failure to state a plausible claim for municipal liability under Section 1983/*Monell*. The Defendant Officers respectfully request that the Court dismiss Count III in its entirety; Count II as to Officers Lorenzo, Crews, Fernandez, and Paige; Count I as to Officer Paige; Counts IX and X as to Officer Tucci; Count X as to Officers Fernandez, Crews, Lorenzo, and Carballo-Perez; Count IX as to Officer Lorenzo; Counts IV and VI as to Officer Carballo-Perez; Count VIII as to Officers Paige, Feldman, and Lorenzo; and Counts V and VII as to Officer Paige. Defendants further request such other and additional relief as the Court deems just and proper.

Respectfully submitted,

RICARDO DOPICO, CITY ATTORNEY
CITY OF MIAMI BEACH
1700 CONVENTION CENTER DRIVE
4th FLOOR-LEGAL DEPARTMENT

MIAMI BEACH, FLORIDA 33139
TEL: (305) 673-7470
FAX: (305) 673-7002

By: /s/*Freddi R. Mack*

HENRY J. HUNNEFELD
Deputy City Attorney
henryhunnefeld@miamibeachfl.gov
Florida Bar No. 343811
FREDDI R. MACK
First Assistant City Attorney
Florida Bar No. 111623
freddimack@miamibeachfl.gov
CARLA POMPA
Assistant City Attorney
carlapompa@miamibeachfl.gov
Florida Bar No. 1069945

**SWITKES & ZAPPALA, P.A.**
407 Lincoln Road, Penthouse SE
Miami Beach, Florida 33139
Tel.: (305) 534-4757
Fax: (305) 538-5504
*/s/Robert L. Switkes*
Robert L. Switkes, Esq.
Florida Bar No. 241059
rswitkes@switkeslaw.com
*/s/ Bradley F. Zappala*
Bradley F. Zappala, Esq.
Florida Bar No. 111829
bzappala@switkeslaw.com
*Counsel for Defendant Officers*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this **4th** day of November, 2026, I electronically filed the foregoing *Motion to Dismiss* with the Clerk of the Court using CM/ECF, which in turn will automatically generate a Notice of Electronic Filing to all parties in the case who are registered users of the CM/ECF system.

By: /s/*Freddi R. Mack*
FREDDI R. MACK